MARIO LUPERINI *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF DU PAGE *et al.*, Defendants-Appellees (Du Page County Department of Environmental Concerns, Defendant).

Second District    No. 2—93—0438

Opinion filed July 22, 1994.

Celeste P. Cinquino, Leo N. Cinquino, and Sandra L. Hebenstreit, all of Righeimer, Martin & Cinquino, P.C., of Chicago, for appellants.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner and Jane Hird Mitton, Assistant State's Attorneys, of counsel), for appellee County of Du Page.

Francis J. Leyhane, of Condon & Cook, of Chicago, and Allan C. Alongi, of Hinsdale, for appellee Downers Grove Township Highway Commission.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiffs, Mario and Filomena Luperini, filed a complaint for a writ of *mandamus* in the circuit court of Du Page County against defendants, the County of Du Page (County), Du Page County Department of Environmental Concerns, and Downers Grove Township Highway Commission (Commission), seeking to compel the institution of condemnation proceedings. In their complaint, plaintiffs alleged that defendants' installation of a storm sewer on an adjoining parcel of land caused a diversion of runoff water onto their property resulting in a physical invasion of their property tantamount to an unconstitutional taking. Du Page County Department of Environmental Concerns was dismissed as a defendant, and the parties subsequently filed cross-motions for summary judgment. Following a hearing on the parties' respective motions, the circuit court denied plaintiffs' motion and granted defendants' motion.

Plaintiffs timely appeal, raising the following issues: (1) whether the trial court erred in determining as a matter of law that defendants' diversion of runoff water onto plaintiffs' property was not a taking; and (2) whether the trial court erred in denying plaintiffs' motion for summary judgment. The Commission has filed with this court a motion to strike portions of plaintiffs' statement of facts and certain documents contained in the record.

Having reviewed plaintiffs' statement of facts, the pertinent portions of the record, and the Commission's alternative statement of facts, we agree that plaintiffs' use of the term "continuous" to describe the state of flooding on their property and their characterization of the trial court's December 22 order as a *denial* of their motion to file complete depositions are both arguably imprecise and potentially misleading. Because our review, however, is not otherwise hindered by these discrepancies, and in light of the fact that the Commission has not otherwise moved to strike the plaintiffs' entire statement of facts or brief, we will proceed to consider plaintiffs' brief while ignoring any inappropriate content. See *City of Highwood v. Obenberger* (1992), 238 Ill. App. 3d 1066, 1073.

Turning to the merits, although the parties have raised several substantive and procedural issues related to the propriety of the trial

court's grant of summary judgment in favor of defendants, we find it unnecessary to reach all of the issues because the determinative issue on appeal is whether the trial court correctly determined as a matter of law that plaintiffs had no clear right to compel the initiation of condemnation proceedings.

In their complaint, plaintiffs alleged that they owned the subject property, and a house located thereon, since 1946. Sometime in 1987, a storm sewer was installed adjacent to Timber Lake. As a result of the storm sewer installation, runoff water, which previously flowed away from plaintiffs' property, was diverted and flowed from Timber Lake onto and over plaintiffs' property. The diverted runoff water has caused substantial damage, including the creation of artificial wetlands and floodplain, and flooding of plaintiffs' basement and garage. The complaint alleged further that "the artificial designation as a wetland and floodplain has resulted in a diminution in value of plaintiffs' property."

Additionally, sometime in 1987 and thereafter, the failure of one or more of the defendants to control erosion in the Sawmill Creek caused water to back up onto plaintiffs' property. Because of the water back up, "a damaging of plaintiffs' property" occurred, resulting in "an excessive determination of floodplain and floodway."

The Commission moved for summary judgment, contending that plaintiffs' complaint did not set forth a clear right to *mandamus*. Attached to the Commission's motion were two letters to plaintiffs' counsel from R.W. Lindley, plaintiffs' expert. Plaintiffs apparently raised no objection in the trial court to the attachment of these letters. The letters generally attribute the flooding on plaintiffs' property to two sources: water diverted from Sawmill Creek because of inadequate erosion controls; and additional storm water runoff diverted from Timber Lake because of the storm sewer installation. In addition to identifying the sources of water, Lindley determined that the sustained flow of storm water, which resulted from the installation of the storm sewer, radically altered the stream hydroperiod. An environment, therefore, was provided for species of materials that produce conditions suitable for the designation of a portion of plaintiffs' property as wetlands. According to Lindley, the unnatural condition produced by the diverted water "seriously damaged" the subject property to the extent that as much as 40% of the property was encumbered with restrictions which denied plaintiffs reasonable use of their property.

The Commission maintained that Lindley's concession that there were two sources of water showed, at best, that the installation of the storm sewer only contributed to the flooding and was not the sole

source. Therefore, because no clear right was demonstrated, the Commission was entitled to summary judgment.

In its motion for summary judgment, the County maintained, in part, that *mandamus* was an improper remedy because Lindley determined that the source of flooding was not a single source attributable solely to the County; that plaintiffs neither alleged nor established that the County had a duty to maintain the main channel of Sawmill Creek adjacent to their property; and that plaintiffs' property historically had been floodplain and wetlands prior to the installation of the storm sewer.

Attached to the County's motion were three exhibits: (1) a copy of a floodplain and wetlands report for the subject property prepared by Christopher Burke, a defense expert; (2) a copy of a letter, dated August 18, 1992, from Lindley to plaintiffs' counsel; and (3) one page of a deposition transcript, which, according to the County's motion, purports to be the testimony of Jeff Dailey, a county employee. The record does not reflect that plaintiffs raised any objection in the trial court to the attachment of these documents.

In his report, Burke opined that plaintiffs' property had been subject to flooding for at least the past 30 years. The home was not elevated sufficiently when it was constructed, and the surrounding property was frequently inundated. Additionally, portions of the property have been classified as jurisdictional wetlands and are probably wetlands today, resulting from "poor soil and inadequate grades on the subject property."

In their response and "counter-motion" for summary judgment, plaintiffs maintained, in part, that they had a clear right to *mandamus* because "defendant" constructed the project which caused the flooding of plaintiffs' property with knowledge of the results of its actions. Attached to their motion were excerpts from several depositions, a partial copy of a Du Page County storm water and floodplain ordinance, and a copy of the August 18, 1992, letter from their expert to plaintiffs' counsel. According to the record, neither the Commission nor the County objected to plaintiffs' attachments.

A fair reading of the deposition excerpts reveals that the storm sewer pipe was installed in either 1983 or 1987 (the record is not entirely clear) to alleviate flooding problems in the Timber Lake subdivision. The Timber Lake subdivision is located to the south of plaintiffs' property. Before the storm sewer was installed, storm run-off water would flow to the south, away from plaintiffs' property. Afterwards, however, the flow of water was diverted northward onto and across plaintiffs' property.

Mario Luperini testified that before 1987 the subject property

may have experienced flooding, but he could not specifically recall whether the present flooding problems were the same as before. Since the beginning of 1987, however, plaintiffs' house would flood every time it rained. Each time, the flooding became progressively worse. When asked whether the flooding in the basement and garage was consistent since 1987, Luperini answered affirmatively. He further stated that whenever there was a "severe rain" the house, basement, and garage flooded. Additionally, an in-ground swimming pool had become unusable because mud from a nearby creek (presumably Sawmill Creek) would fill the pool. There was no evidence presented that the water accumulations which resulted from the diverted run-off water and the creek were a permanent condition.

On appeal, plaintiffs maintain that the trial court erred in entering summary judgment in favor of defendants because the question of whether the physical invasion of water was tantamount to a "taking" is a question of fact which must be resolved by the trier of fact. Plaintiffs maintain further that they were entitled to judgment as a matter of law because defendants presented no evidence to contradict the deposition excerpts attached to their motion, which established the existence of flooding of their property resulting in part from the storm sewer installation.

The general principles governing our *de novo* review of motions for summary judgment are well established (see, *e.g.*, *In re Estate of Hoover* (1993), 155 Ill. 2d 402, 410-11) and need not be repeated here. Moreover, when all parties move for summary judgment, the court is invited to decide issues thus presented as questions of law, and the entry of summary judgment for one party or the other is proper. (*Spencer v. Riordan* (1992), 240 Ill. App. 3d 938, 944.) As a reminder, the circuit court may grant summary judgment on undisputed facts only if all the evidence, when viewed in a light favorable to the non-movant, permits no inferences from which different conclusions may be drawn and with which no reasonable person could disagree. (*Caponi v. Larry's 66* (1992), 236 Ill. App. 3d 660, 670.) Taking into consideration the principles governing our review of summary judgments, the evidence presented to the trial court, and the parties' arguments, we find the pivotal question to be whether the undisputed facts allow a determination as a matter of law that no actual physical invasion of plaintiffs' property tantamount to a taking had occurred.

The facts material to this determination are not disputed. Sometime in either 1983 or 1987 a storm sewer pipe was installed near plaintiffs' property in order to alleviate occasional flooding of a housing subdivision to the south of the subject property. As a conse-

quence of the storm sewer installation, storm water runoff was diverted onto and across plaintiffs' property, which resulted in flooding of plaintiffs' house, garage, and basement. Additionally, when it rains, the Sawmill Creek backs up causing flooding on plaintiffs' property.

The flooding has caused a proliferation of wetland vegetation and an increase in size of the floodplain on plaintiffs' property. There was no evidence, however, that the flooding caused a permanent accumulation of water on plaintiffs' property, and some evidence was presented to suggest that plaintiffs' property had been subject to occasional flooding prior to the storm sewer being installed and that an undefined portion of the property was previously classified as jurisdictional wetlands.

●1 It is well established that a landowner may bring an action against a responsible agency to compel the institution of eminent domain proceedings where there has been a taking without just compensation. (*Rosenthal v. City of Crystal Lake* (1988), 171 Ill. App. 3d 428, 437.) To constitute a "taking" compensable through eminent domain proceedings, there must be an actual physical invasion of the property. (*Patzner v. Baise* (1990), 133 Ill. 2d 540, 546; *People ex rel. Pratt v. Rosenfield* (1948), 399 Ill. 247, 251.) Because eminent domain law distinguishes between property that has been physically taken and property that has been damaged (*Patzner*, 133 Ill. 2d at 546), the property owner cannot, by *mandamus*, compel the institution of eminent domain proceedings where no part of the land is taken (*Patzner*, 133 Ill. 2d at 546).

●2 Where an adjacent or abutting landowner is inundated with water resulting from the construction of a public improvement, the question of whether a taking has occurred turns on the temporal nature of the inundation. (See generally *Herget National Bank v. Kenney* (1985), 105 Ill. 2d 405; *Pratt*, 399 Ill. at 251.) Where the public improvement causes only temporary accumulations of water on the subject property, a taking has not occurred. (*Pratt*, 399 Ill. at 252.) In contrast, where water occasioned from the construction of a public improvement permanently inundates the subject property, it has been held that a physical invasion tantamount to a taking has occurred. *Herget*, 105 Ill. 2d at 410.

In *Pratt*, the court determined that no taking had occurred where temporary accumulations of water, which were occasioned by the construction of a railroad viaduct adjacent to the subject property, damaged a property owner's buildings. The court stated:

> "As to whether the alleged damages are such as to amount to a physical taking of property, we note the allegations that surface

waters run into buildings and make them unfit for the uses to which they are now devoted and will damage or destroy valuable equipment, machinery and supplies therein; that it will be necessary to change the floor levels and that because of the materials of which the buildings are constructed the change of floor levels will require large expenditures of money. It is not alleged that these waters accumulate and remain on the premises and thereby prevent the use thereof, but it is claimed that by reason of their running into the buildings the damages are occasioned. Running surface waters are not constantly present but are temporary and come as a result of rain or snow." *Pratt*, 399 Ill. at 251.

In *Herget*, the State constructed causeways across a lake for the purpose of increasing its size. As a consequence, the property in question became a submerged portion of the newly enlarged lake. Before reaching the ultimate issue before it, the court determined that an actual physical invasion tantamount to a taking had occurred. *Herget*, 105 Ill. 2d at 410.

●3 The undisputed facts of the present case are controlled by *Pratt*. Although the deposition excerpts attached to plaintiffs' response and motion allow for a reasonable inference that each time it rained their house, garage, and basement were damaged because of flooding, there is no evidence that the accumulations of water were permanent. Furthermore, the evidence did not establish that plaintiffs were prevented from the use of their premises because of permanent accumulations of water. In his August 22 letter, plaintiffs' expert nowhere stated that plaintiffs were prevented from the use of their property resulting from permanent accumulations of water. Instead, he stated that "[t]he sustained length of time and increased rate of flow in the channels that cross the property *** will greatly increase the costs and difficulty involved in maximizing the productivity of the property." Furthermore, plaintiffs' expert expressed his view that the erosion and sediment accumulation in the Sawmill Creek and the water diversion resulting from the sewer pipe installation could be corrected through excavation and the provision of a covered conduit conveyance system, which would eliminate the conditions conducive to the formation of wetlands vegetation.

Plaintiffs also maintain that the diversion of water made future development of the property economically infeasible and therefore constitutes a taking of plaintiffs' property. In order to compel the initiation of condemnation proceedings, plaintiffs must demonstrate an actual physical invasion of their property which deprived them of the use thereof. (*Pratt*, 399 Ill. at 251-53.) Plaintiffs cite no authority where mere economic infeasibility, or a diminution in development

potential, has been equated to an actual physical invasion tantamount to a taking. Accordingly, we find this argument unavailing.

Plaintiffs also argue that the government cannot use their property as a "retention site" without the payment of just compensation. This argument is without merit because there was no evidence that the water accumulations occasioned by the construction of the sewer storm pipe were permanent. We note further that the trial court expressly rejected plaintiffs' description of the property as a retention site and further questioned plaintiffs' unsupported characterization.

Additionally, the cases primarily relied on by plaintiffs are readily distinguishable. In *Rosenthal v. City of Crystal Lake* (1988), 171 Ill. App. 3d 428, this court determined that a physical invasion of the subject property occurred where the governmental entity had buried a storm sewer $7^1/_2$ feet beneath the subject property. (*Rosenthal*, 171 Ill. App. 3d at 437.) We agree entirely with the conclusion in *Rosenthal*, but fail to see how it supports plaintiffs' position. Plaintiffs have not shown that the sewer installation or any other permanent physical intrusion was on or beneath the plaintiffs' property.

In *Horn v. City of Chicago* (1949), 403 Ill. 549, the court held that the timeliness of a landowner's action for damages arising from the construction of a bridge and certain improvements near the subject property would be determined under the five-year statute of limitations, then in effect, for actions to recover damages for injuries to real property. (*Horn*, 403 Ill. at 561.) Although the court recognized that the physical invasion of "superinduced additions of water" onto real property resulting from the construction, maintenance, and operation of a public improvement "so as to effectually destroy or impair its usefulness" would constitute a taking, the court never determined whether temporary accumulations of water resulting from such a project would be tantamount to taking. *Horn*, 403 Ill. at 554.

*Elser v. Village of Gross Point* (1906), 223 Ill. 230, likewise offers little support for plaintiffs' position. In *Elser*, the court merely recognized that a municipal corporation, in the exercise of its powers of eminent domain, may divert water in large quantities by an artificial channel upon the land of another. This proposition is entirely consistent with *Pratt* and *Herget*, but offers little support for plaintiffs' contention that temporary accumulations of water occasioned by the construction of the sewer pipe were tantamount to a taking without just compensation.

Finally, plaintiffs' reliance on *County of Winnebago v. Kennedy* (1965), 60 Ill. App. 2d 408, is misplaced. In *Kennedy*, the court held

that a cross-petition which failed to allege facts demonstrating frequency, duration, or amount of water which was expected to be diverted, as grounds to warrant injunctive relief, was insufficient as a matter of law. (*Kennedy*, 60 Ill. App. 2d at 414.) Plaintiffs maintain that *Kennedy*'s reference to whether a diversion of water constitutes a taking or merely damage depends on the facts of the case requires that any taking question be resolved by the trier of fact. We disagree. Although each case necessarily rises and falls on its own particular set of circumstances, we are not compelled to conclude that the question of whether a taking has occurred must always be relegated to the trier of fact. The undisputed material facts in the present case did not raise reasonably differing inferences as to whether the accumulations of water were temporary or permanent. Accordingly, under these circumstances, the trial court could make an independent determination, as a matter of law, whether the diversion of storm water runoff onto plaintiffs' property resulting from the installation of the storm sewer resulted in a taking without just compensation.

Finally, we note that plaintiffs have mounted no serious challenge to the trial court's grant of summary judgment in favor of the County. Although plaintiffs make passing references in their brief to the overflow of the Sawmill Creek, the primary thrust of their appeal is directed toward the trial court's ruling in favor of the Commission. Accordingly, we need not address the propriety of trial court's grant of summary judgment in favor of the County because issues not raised on appeal are waived. (134 Ill. 2d R. 341(e)(7).) Moreover, even were we to reject the County's contentions that there was no evidence that it owed plaintiffs a duty to maintain the Sawmill Creek and that the failure to maintain was only a contributing cause to the nonpermanent flooding on plaintiffs' property, the undisputed material facts nevertheless established no basis upon which to conclude that a taking occurred.

Accordingly, for the foregoing reasons, we affirm the order of the circuit court of Du Page County, granting summary judgment in favor of defendants and denying plaintiffs' motion for summary judgment.

Affirmed.

McLAREN and QUETSCH, JJ., concur.