# In the
# United States Court of Appeals
## For the Seventh Circuit
———————

No. 06-1286

SHIRLEY A. ROCKSTEAD and CAROL J. HENDERSON,

*Plaintiffs-Appellants*,

*v.*

CITY OF CRYSTAL LAKE,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 4485—**James B. Moran**, *Judge*.

———————

ARGUED OCTOBER 31, 2006—DECIDED OCTOBER 31, 2006[Œ]
OPINION APRIL 10, 2007

———————

Before POSNER, WOOD, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. The Constitution does not forbid government to take private property for public use; it merely requires that, if it does so, it pay the owner just compensation. Therefore the Constitution is not violated until the government refuses to compensate the owner. *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 194-95 and n. 13 (1985). When, as

---

[Œ] With a notation that an opinion would follow.

alleged in this case, the government (a town in Illinois) takes the property without a condemnation proceeding, the owner must, if the government refuses to pay, file a suit in state court—what is called an "inverse condemnation" suit—to obtain the compensation due him, and he must exhaust his state judicial remedies, if necessary by appealing an adverse decision. *Daniels v. Area Plan Commission*, 306 F.3d 445, 454-55 (7th Cir. 2002). He must proceed in that way because unless and until the state courts turn him down, his right to just compensation has not been infringed. *Gamble v. Eau Claire County*, 5 F.3d 285, 285-86 (7th Cir. 1993).

The plaintiffs started down that path, but before completing their state-court proceeding (which remains pending) filed the present suit, in federal court, seeking just compensation under federal constitutional law. They justify this short-circuiting of the state courts on the ground that state law is so clearly against them that it would be futile to proceed to final judgment in those courts. The district court disagreed and granted the town's motion to dismiss.

The plaintiffs own a parcel of land that on its west side is adjacent to a railroad right of way and on its north side to storm-water detention ponds and a waste water treatment facility; the ponds and the treatment facility are owned by Crystal Lake. The plaintiffs' land drained through a ditch in the railroad right of way until the town installed a pipeline in the ditch at an angle that cut off the plaintiffs' drainage, resulting in intermittent but recurring flooding of their land from the ponds that transformed it from productive farmland into worthless wetlands. It is the resulting impairment of the value of their land that the plaintiffs claim is a taking entitling them to just compensation.

They argue that under Illinois law, as authoritatively declared in *People ex rel. Pratt v. Rosenfield*, 77 N.E.2d 697, 699-700 (Ill. 1948), it is plain that a suit for inverse condemnation ("inverse" because brought by the landowner, complaining of the taking, rather than brought by the condemnor to obtain title to the land) will not lie for damage caused by intermittent flooding, whatever the consequences of the flooding. And so the state trial court ruled in the pending state court litigation, before the plaintiffs, contending that the intermittent flooding of their property resulted in a taking as a matter of federal constitutional law, turned to federal court. The state judge's ruling was interlocutory because other claims and parties remain in the state litigation, but the plaintiffs could have sought the judge's leave to appeal the ruling under Illinois's counterpart to Fed. R. Civ. P. 54(b). See Ill. S. Ct. R. 304(a); *In re Marriage of Lentz*, 403 N.E.2d 1036, 1039 (Ill. 1980). They still can obtain appellate review of the ruling, when the state litigation concludes. But they say there's no point in continuing in state court because the outcome is foreordained by state law.

If a state statute or constitutional provision provided that inverse condemnation was inapplicable to an impairment of land values that was due to intermittent flooding, recourse to state remedies would indeed be pointless and would therefore not be required. *Williamson County Regional Planning Commission v. Hamilton Bank, supra*, 473 U.S. at 197; *Daniels v. Area Plan Commission, supra*, 306 F.3d at 456-58. But the situation is different when as in this case the obstacle to the remedy is a state common law doctrine. *SGB Financial Services, Inc. v. Consolidated City of Indianapolis*, 235 F.3d 1036, 1037-39 (7th Cir. 2000); *Samaad v. City of Dallas*, 940 F.2d 925, 934 (5th Cir. 1991); *Austin v.*

*City & County of Honolulu*, 840 F.2d 678, 680-81 (9th Cir. 1988). Judges do not make statutes or constitutions and cannot change them, but they do make, and they can—and do—change, common law doctrines. Such doctrines (such as the intermittent-flooding doctrine of the *Pratt* decision) tend, moreover, to be flexible in application. The "black letter" rules that restaters and treatise writers derive from common law decisions are usually standards rather than hard-and-fast rules—generalizations that yield to the particulars of the individual case. Holmes went too far when he stated without qualification that "general propositions do not decide concrete cases," *Lochner v. New York*, 198 U.S. 45, 76 (1905) (dissenting opinion), but one sees what he was driving at. So when a question of the meaning or application of a state common law doctrine is at issue, "instead of asking a federal judge to guess what a state court is likely to do, why not ask the state court?" *SGB Financial Services, Inc. v. Consolidated City of Indianapolis*, *supra*, 235 F.3d at 1038.

The Illinois cases that hold that intermittent flooding does not create the sort of damage for which compensation is required rest on the common sense view that ordinarily such flooding does not do permanent damage. Illustrative is *Luperini v. County of Du Page*, 637 N.E.2d 1264, 1269 (Ill. App. 1994), where we read that "the evidence did not establish that plaintiffs were prevented from the use of their premises because of permanent accumulations of water." Many of us have had our basements flooded from time to time but we do not expect such incidents to cause a permanent reduction in the value of the house. Flood waters recede and the flooded buildings or land normally recover their previous value.

But the situation has changed with the rise of severe legal restrictions (especially those imposed by the Clean

Water Act, 33 U.S.C. §§ 1251 *et seq.*) on the use that a property owner may make of land declared to be wetlands. E.g., *Palazzolo v. Rhode Island*, 533 U.S. 606, 621 (2001); *Rapanos v. United States*, 126 S. Ct. 2208, 2225-27 (2006) (plurality opinion); *Kelly v. EPA*, 203 F.3d 519, 520-22 (7th Cir. 2000); *Hoffman Homes, Inc. v. Administrator*, 999 F.2d 256, 258 (7th Cir. 1993); *Smith v. City of Clearwater*, 383 So. 2d 681, 684-85 (Fla. App. 1980). Such a declaration, while good news for certain birds and other types of animal and for the health of the environment in general, is bad news for the owner of the property, who may find himself forbidden to build improvements on it or otherwise put it to what the market would consider a productive use. E.g., *Bayou Des Familles Development Corp. v. United States*, 130 F.3d 1034, 1039-40 (Fed. Cir. 1997); *Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171, 1180-82 (Fed. Cir. 1994). Intermittent flooding the cumulative effect of which is to transform an owner's property into permanent wetlands is hard to distinguish from permanent flooding that puts the land permanently underwater. Soggy and submerged are not synonyms but in the modern era of wetlands protection may have the same effect on property values.

We see a glimmering of recognition of this point in *Luperini v. County of DuPage*, *supra*. The case involved the same kind of intermittent flooding as this case—flooding due to the county's having installed a storm sewer on property adjacent to the plaintiffs' property that diverted water onto their property. In ruling against the plaintiffs in their inverse condemnation suit on the ground that "where the public improvement [the storm sewer] causes only temporary accumulations of water on the subject property, a taking has not occurred," the court noted

evidence that "the plaintiffs' property had been subject to occasional flooding prior to the storm sewer being installed and that an undefined portion of the property was previously classified as jurisdictional wetlands." 637 N.E.2d at 1268. The implication is that if the flooding *created* "jurisdictional wetlands," this might be deemed a taking under Illinois law. There was also evidence that despite the intermittent flooding the plaintiffs could continue to use the property as they had been doing, albeit at a higher cost; and there was also evidence that they might be able to eliminate the problem created by the storm sewer by installing a covered conduit conveyance system. *Id*. at 1269. All this evidence may just have been icing on the cake, but the court's recital of it suggests that had the evidence been more favorable to the plaintiffs they might have won.

The Supreme Court of Illinois has not weighed in on the issue since the *Pratt* case in 1948, more than half a century ago. It is premature to conclude that if faced with a case such as this it would deny relief on the basis of a mechanical application of the "temporary accumulations" doctrine.

For us to rule otherwise would actually do a disfavor to property owners such as these plaintiffs, who, in order to bring the case within a "futility" exception find themselves arguing against themselves, as when they say in their brief: "The matter is not remotely debatable. The Owners have no remedy under Illinois inverse condemnation law." The first sentence is definitely wrong, and the second sentence may well be wrong. But when the plaintiffs, disappointed in this court, resume the litigation in the state court, they will find those sentences quoted against them by their adversaries.

A "futility" exception broad enough to embrace this case not only would induce owners to shoot themselves in the foot, but would reflect an exaggerated conception of the rigidity of common law doctrines, make the right to sue in federal court depend on uncertain predictions about what state courts would do in a similar case, and curtail the evolution of state common law by keeping cases that challenge the existing doctrine out of state court where they could influence the law.

We did say in the *SGB* case that "in principle one could imagine a precedent with the same effect as the lack of an inverse-condemnation law. Suppose, for example, the Supreme Court of Indiana had held that regulatory takings as a class are never compensable under the state's inverse-condemnation law." *SGB Financial Services, Inc. v. Consolidated City of Indianapolis*, *supra*, 235 F.3d at 1039; see also *Bateson v. Geisse*, 857 F.2d 1300, 1306 (9th Cir. 1988); *Austin v. City & County of Honolulu*, *supra*, 840 F.2d at 680-81. We have found only one case to fit *SGB*'s example—*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1506-07 (9th Cir. 1990), which allowed a landowner to bypass the state courts because the state's highest court had held that landowners could not seek compensation for a regulatory taking through inverse condemnation proceedings (or otherwise). *Agins v. City of Tiburon*, 598 P.2d 25 (Cal. 1979). But ours is not such a case; it is a case in which state law is uncertain because of the antiquity of the ruling state supreme court decision, and the intervening change in the legal status of wetlands. Recall the intimation in *Luperini* that flooding that creates "jurisdictional" (legally protected) wetlands might be deemed a compensable taking under Illinois law.

So the plaintiffs' federal case was rightly dismissed, and that raises the question of what will happen to their federal claim pressed futilely on us. In state court they were seeking relief under Illinois state law, not, so far as we are aware, under the federal Constitution. Although the *Williamson* line of cases that requires the property owner to seek compensation in the state courts speaks in terms of "exhaustion" of remedies, that is a misnomer. For if, as the present plaintiffs will have to do, the property owner goes through the entire state proceeding, and he loses, he cannot maintain a federal suit. The failure to complain of the taking under federal as well as state law is a case of "splitting" a claim, thus barring by virtue of the doctrine of res judicata a subsequent suit under federal law. For the general principle, see *Torcasso v. Standard Outdoor Sales, Inc.*, 626 N.E.2d 225, 228-29 (Ill. 1993), and *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 824-25 (Ill. 1992), and for its application to cases such as this see *American Nat'l Bank & Trust Co. v. City of Chicago*, 636 F. Supp. 374, 378-80, 384 (N.D. Ill. 1986) (Illinois law); *Wilkinson v. Pitkin County Board of County Commissioners*, 142 F.3d 1319, 1322-25 (10th Cir. 1998) (per curiam); *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364-65 (9th Cir. 1993). The litigation in state court is the end of the road, see 28 U.S.C. § 1738, unless the state itself allows relitigation of the constitutional question. *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 341-48 (2005).

It is unclear whether the plaintiffs have even raised their federal claim in the pending state court proceeding. (They have not pressed it.) If they have not done so but still can, they would be well advised to do so.

AFFIRMED.

No. 06-1286                                                    9

A true Copy:

    Teste:

                        _____
                        *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*