In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-3735

BRUCE PETERS,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF CLIFTON, an
Illinois Municipal Corporation,
ALEXANDER COX & MCTAGGERT,
INCORPORATED and JOSEPH
MCTAGGERT,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 05 C 2242—**Michael P. McCuskey**, *Chief Judge.*

ARGUED MAY 1, 2007—DECIDED AUGUST 22, 2007

Before RIPPLE, MANION and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Bruce Peters brought this action
under 42 U.S.C. § 1983 against the Village of Clifton
("Village"), Alexander, Cox & McTaggert, Inc. ("ACM")
and Joseph McTaggert. He alleged that the defendants
had trespassed on his property in order to expand the
Village's sewage discharge system and, in so doing, had
committed an unconstitutional taking of his property in

violation of the Fifth and Fourteenth Amendments. On the Village's Rule 12(b)(1) motion, the district court dismissed the action. Mr. Peters appealed. We agree that the district court properly dismissed the action, and, accordingly, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

Mr. Peters owns a parcel of agricultural land just outside the eastern edge of the village limits of Clifton, Illinois. ACM owns agricultural property within the village limits that directly abuts Mr. Peters' land. Running eastward along Mr. Peters' property is a waterway that empties into a drainage ditch. At some unknown time in the past, prior to Mr. Peters' ownership of the property, farm drainage tile had been buried on Mr. Peters' land. The tile was parallel to and beneath the waterway. The Village had an existing sewage line in the vicinity for some time. The line ran under ACM's property.

Mr. Peters claims that, in 2005, the private defendants, at the instruction of the Village, trespassed onto his land, dug up the old, non-functioning sewer tile and installed new, larger tile. This newly-installed tile, Mr. Peters contends, was then connected to the Village's existing sewage tile "at or about the property line" between his land and that owned by ACM. R.1 at 4. The Village thus created, he maintains, an "unregulated[,] unlicensed sanitary sewer system discharging sewage through the farm tile within [Mr. Peters'] property." *Id*. at 3. Mr. Peters believes that the Village made these improvements in an attempt to

make the adjacent land within the Village boundaries suitable for development.

Mr. Peters claims that, to install the new tile, ACM, with the consent of the Village, came onto his property and used "various poisons on the nature preserve bordering the above ground drainage ditch, underneath which is the [Village's] illegal sanitary sewage line." He claims that this action destroyed trees and destabilized the land. *Id.* at 4. Mr. Peters claims that acres of his farmland were rendered unsuitable for agricultural uses because of soil compaction and drainage of "untreated sewage and waste materials." *Id.* at 5.

## B. District Court Proceedings

Mr. Peters filed a complaint in the United States District Court for the Central District of Illinois. He asserted that the defendants had committed an unauthorized taking of his property in violation of the Takings Clause of the Fifth Amendment of the Constitution as made applicable to the states through the Fourteenth Amendment. *See Chicago, B. & Q. R. Co. v. City of Chicago*, 166 U.S. 226, 233, 236-37 (1897). Mr. Peters requested compensatory damages for the taking and a permanent injunction forbidding the Village from discharging any materials through the drainage tiles on his property.[1]

The Village moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter

---

[1] Mr. Peters claims that, in the acts giving rise to his complaint, both the Village and the private defendants were acting under color of state law for purposes of liability under 42 U.S.C. § 1983.

jurisdiction, claiming that the action was not ripe. Specifi-cally, the Village contended that, before Mr. Peters could assert a takings claim in federal court, he was required first to seek compensation through appropriate state channels. This course was mandated, in the Village's view, by the decision of the Supreme Court in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson County*, 473 U.S. 172 (1985).

In his memorandum opposing the motion to dismiss, Mr. Peters maintained that the Village was not a home rule municipality under Illinois law, and, therefore, had no eminent domain power with respect to his land. Mr. Peters further asserted that, because of the Village's status, he could not institute inverse condemnation pro-ceedings against it and therefore was exempted from *Williamson County*'s exhaustion requirement on futility grounds.

The district court agreed with the Village that, under *Williamson County*, Mr. Peters was obligated to show either that he had exhausted state remedies or that those remedies were unavailable to him. The district court assumed for purposes of its analysis that the Village had no eminent domain powers under Illinois law. The court concluded, however, that, if the only remedy the state provided for a taking was dependent upon a particular jurisdiction's home rule status, the lack of an available remedy in a case such as this one would violate the Tak-ings Clause of the Illinois Constitution. The district court held that, absent explicit authority from the Illinois courts that no state remedy was available for takings effected by non-home rule jurisdictions, Mr. Peters was required to seek compensation from the state, whether titled an inverse

condemnation proceeding or a suit in tort.[2] Because Mr. Peters had not availed himself of state procedures for obtaining compensation, the court concluded that his claim for a violation of the Takings Clause of the Fifth Amendment was not ripe. Accordingly, the district court dismissed the case for lack of subject matter jurisdiction.[3]

## II

## DISCUSSION

We review de novo a district court's order dismissing a case for lack of subject matter jurisdiction under Rule 12(b)(1). *Small v. Chao*, 398 F.3d 894, 897 (7th Cir. 2005). We must accept all facts stated in the complaint as true and must draw all reasonable inferences in the light most favorable to the plaintiff. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007).

## A.

We pause at this point to set forth in some detail Mr. Peters' arguments. In support of his contention that

---

[2] *See* R.22 (Report of Recommendation of Magistrate Judge, adopted by the district court at R.25).

[3] On Mr. Peters' first attempt to appeal this decision, this court dismissed the appeal for lack of subject matter jurisdiction because the judgment was not a final resolution of all claims against all parties or an authorized interlocutory appeal. On Mr. Peters' motion, the district court amended its judgment to dismiss all claims against all parties for lack of subject matter jurisdiction, and Mr. Peters timely appealed.

*Williamson County* does not require exhaustion in this case and that therefore the matter is ripe for federal adjudication, Mr. Peters makes three principal, but interrelated, arguments. First, Mr. Peters claims that *Williamson County*, by its terms, is limited to suits *for compensation*, not suits seeking to *enjoin* an "unlawful" taking, and, therefore, at minimum, his claim for injunctive relief should proceed immediately. Next, he claims that *Williamson County* does not require him to pursue speculative and unproven compensation procedures available in Illinois. Finally, he contends that *Williamson County* expresses a *prudential* ripeness requirement, not an Article III requirement, and that compelling reasons support a different prudential rule in a case such as this one.[4]

---

[4] Mr. Peters also claims that a cause of action under 42 U.S.C. § 1983 does not require "exhaustion" of state remedies, *see Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982), and, at oral argument, he stated that there is no "exception" to this general rule applicable to takings claims. In this respect, he misunderstands the use of the term "exhaustion" in the context of *Williamson County*. As we stated in *Daniels v. Area Plan Commission*, 306 F.3d 445 (7th Cir. 2002),

> the additional ripeness requirements of *Williamson County* create a takings claim exception to *Patsy*'s general requirement that exhaustion is not required in § 1983 suits. Therefore litigants, like the [plaintiffs] in this case, who assert a takings claim under 42 U.S.C. § 1983 may not rely solely on *Patsy*, but must meet the Court imposed ripeness requirements of *Williamson County* prior to bringing a federal claim.

*Id.* at 453; *see also Williamson County Reg. Planning Comm'n v. Hamilton Bank of Johnson County*, 473 U.S. 172, 194-95 & n.13 (1985) (noting that "exhaustion" is not required, but that "no

(continued...)

More specifically, Mr. Peters contends that the Village's sanitary drainage system and the occupation and use of his property for that system are illegal and unauthorized. In his view, the Village has no ownership rights over the property or over the ditch and tile on his property. Nor has the Village, as a municipal entity without home rule authority, any power of eminent domain over that property. Consequently, he argues, he is entitled to injunctive relief to end the occupation of the property by the Village. He relies on our decision in *Daniels v. Area Plan Commission*, 306 F.3d 445 (7th Cir. 2002).

Mr. Peters then submits that there is another, and related, reason why he should not be required to observe the exhaustion requirement of *Williamson County*. He notes that *Williamson County* requires the exhaustion of state remedies only when the state procedures are available and adequate. *Williamson County*, 473 U.S. at 194, 197. When no such procedure is available in state court, the requirement is inapplicable, and a litigant may resort to a takings claim in federal court without any antecedent

---

[4] (...continued)
constitutional violation occurs until just compensation has been denied," and, therefore, resort to state procedures is necessary). Our cases have used "exhaustion" as a shorthand for the requirement of resort to available state process identified in *Williamson County*. *See Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 957 (7th Cir. 2004); *Daniels*, 306 F.3d at 453; *Forseth v. Vill. of Sussex*, 199 F.3d 363, 372 (7th Cir. 2000). We continue to do so here, although we acknowledge the conceptual distinction between our usual use of the term, *see Patsy*, 457 U.S. 496, and the notion that an injured property owner's takings claim is not ripe until just compensation is denied, *see Williamson County*, 473 U.S. at 194-95.

litigation in the state forum. He contends that, because of its non-home rule status, the Village is exempt from an inverse condemnation remedy and, therefore, the only possible state remedies available to him are speculative and theoretical. *Williamson County*, he reminds us, imposes on him no obligation to expend time and resources exploring such gossamer paths. The state avenue of relief, he further reminds us, must be "reasonable" and "certain" at the time of the taking. *Id.* at 194 (quoting *Regional Rail Reorganizational Act Cases*, 419 U.S. 102, 124-25 (1974)).

Mr. Peters elaborates further that there is no specific statutory remedy for inverse condemnation in Illinois and that, therefore, a landowner who has been denied the use of his property by the government, without an eminent domain action having been brought, must bring a mandamus action against that governmental entity to compel it to institute eminent domain proceedings. For such a mandamus action to succeed, however, the defendant governmental entity must have the authority to carry out the task that the plaintiff claims it has a clear legal duty to perform. Here, he continues, the Village, by virtue of its status as a non-home rule municipality, has no authority to bring the eminent domain proceeding which Mr. Peters believes should have been brought. Moreover, he continues, with one exception not relevant here, the Village's powers are limited to its own territory, and Mr. Peters' land is not within the boundaries of the Village. Consequently, from Mr. Peters' perspective, inverse condemnation procedures are unavailable and inadequate and he may proceed in federal court to seek injunctive and compensatory relief.

**B.**

The Takings Clause of the Fifth Amendment provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V. "*While it confirms the State's authority to confiscate private property*, the text of the Fifth Amendment imposes two conditions on the exercise of such authority: the taking must be for a 'public use' and 'just compensation' must be paid to the owner." *Brown v. Legal Found. of Washington*, 538 U.S. 216, 231-32 (2003) (emphasis added).

"The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County*, 473 U.S. at 194. This principle makes clear that, ordinarily, compensation, not an injunction, is the appropriate remedy for a taking that satisfies the public use requirement. *Patel v. City of Chicago*, 383 F.3d 569, 574 (7th Cir. 2004). "[T]he federal courts' role is not to enjoin localities from exercising their eminent domain powers, but to ensure that property owners are justly compensated when localities exercise that power." *Id.* at 574.[5]

Because "[n]o constitutional violation occurs until just compensation has been denied," *Williamson County*, 473 U.S. at 195 n.13, the Supreme Court has crafted a special ripeness doctrine that applies to claims arising under the Takings Clause. In *Williamson County*, the Supreme Court considered a claim for a temporary regulatory taking,

---

[5] *See also McKenzie v. City of Chicago*, 118 F.3d 552, 556 (7th Cir. 1997) ("States condemn and pay for land all the time; the Takings Clause of the fifth amendment supposes that money damages are a constitutionally adequate substitute for real property.").

occasioned by zoning regulations covering a particular plot of land. The Court affirmed the dismissal of the action by the landowner, holding it premature on two separate bases. First, the Court ruled that the landowner had failed to obtain a final decision from the state agency responsible for the taking. *Williamson County*, 473 U.S. at 190-94 (explaining the final decision requirement). Second, the Court reiterated the principle that the Constitution does not prevent "taking[s]," but rather prohibits "taking[s] without just compensation." *Id.* at 194. A state need not provide compensation prior to, or contemporaneous with, the alleged taking, so long as there is a "reasonable, certain and adequate provision" at the time of the taking for an injured property owner to obtain just compensation from the state after the taking has been accomplished. *Id.* at 194 (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. at 124-25); *see also id.* at 196. Therefore, a plaintiff property owner cannot claim a violation of the Just Compensation Clause until he has sought and been denied compensation under available state court procedures. *Id.* at 194 n.13, 195.

We have described the alternate bases for dismissing the claim in *Williamson County* as a two-pronged ripeness requirement for takings claims: (1) a final decision by the government entity responsible for the taking and (2) exhaustion of state procedures. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 372 (7th Cir. 2000). Since *Williamson County*, we also have recognized that allegations of *physical* takings are subject to a streamlined ripeness analysis; the taking itself constitutes a final action, and therefore a court need only assess whether the plaintiff had availed himself of appropriate state procedures. *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 958 (7th Cir. 2004).

*Williamson County* created a "limited exception to its exhaustion requirement based on the futility of seeking state court relief." *Daniels*, 306 F.3d at 456. If a property owner demonstrates that state procedures for obtaining just compensation are either unavailable or inadequate, the claim is immediately ripe in federal court. *See Williamson County*, 473 U.S. at 196-97; *Daniels*, 306 F.3d at 456, 457-58.

Despite the strong presumption that damages, not injunctive relief, is the appropriate remedy in a Takings Clause action, our case law does acknowledge that there are limited circumstances in which injunctive relief is available. For instance, it is well accepted that, when the government has taken property for a private, rather than a public, use, injunctive or declaratory relief may be appropriate. *See Daniels*, 306 F.3d at 457 n.11. Similarly, the Supreme Court has held that many facial challenges to legislative action authorizing a taking can be litigated immediately in federal court. *See San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 345 (2005); *Yee v. City of Escondido*, 503 U.S. 519 (1992); *see also Holliday Amusement Co. of Charleston v. South Carolina*, ___ F.3d ___, 2007 WL 1893384, at *2 (4th Cir. July 3, 2007) ("[T]he state procedures requirement does not apply to facial challenges to the validity of a state regulation.").

With these principles in mind, we now turn to Mr. Peters' specific contentions. Mr. Peters submits that this futility exception applies in this case. In his view, exhaustion would be futile here because an inverse condemnation remedy is not available to him under Illinois law. He relies on Illinois precedent that states that the usual remedy in Illinois "inverse condemnation" situations is a mandamus action seeking to compel the responsible agency to

institute condemnation proceedings, *see, e.g.*, *Luperini v. County of DuPage*, 637 N.E.2d 1264, 1268 (Ill. App. Ct. 1994); if the agency (or local government) has no authority to institute eminent domain proceedings, Mr. Peters contends, a mandamus action against it will fail, and the state will provide no remedy.

Mr. Peters has not met his burden of demonstrating that it would be futile to pursue available remedies in state court. In Illinois, inverse condemnation is a judicially recognized remedy arising out of the self-executing takings provision of the Illinois Constitution. Illinois Const. art. 1, § 15; *see also Warner/Elektra/Atlantic Corp. v. County of DuPage*, 991 F.2d 1280, 1284-85 (7th Cir. 1993) (explaining the availability of a judicially-created inverse condemnation action under the Illinois Constitution); *Roe v. Cook County*, 193 N.E. 472, 474 (Ill. 1934) (interpreting the Takings Clause of the Illinois Constitution as self-executing). Specifically, in *Roe v. Cook County*, 193 N.E. 472 (Ill. 1934), the Supreme Court of Illinois has stated that:

> [w]hen the Constitution forbids the taking or damaging of private property without just compensation and points out no remedy, and no statute affords one, for the invasion of the right of property thus secured, the common law, which affords a remedy for every wrong, will furnish the appropriate action for the redress of such grievance.
>
> . . . .
>
> It is entirely beside the point to say that even though our bill of rights assures every person that his property will not be taken for public use without just compensation, yet where a county or other public body violates this section by taking private property

without condemnation proceedings, one may not recover simply because the Legislature has failed to provide any specific remedy. If this were true, the constitutional guaranty would be nugatory and private property could be taken with impunity and without redress to the injured property owner. The constitutional provision itself, without remedial legislation, is basic law, which not only confers a right but *presupposes a remedy*.

*Id.* at 473-74 (emphasis added). Under *Roe*'s interpretation of the Illinois Constitution, the common law of Illinois will afford Mr. Peters a remedy. Indeed, Mr. Peters does not contend that *Roe* is no longer the law of Illinois; nor has he identified a single case in which compensation was refused on the basis that he asserts would doom his efforts to obtain relief in Illinois courts.[6] Rather, Mr. Peters

---

[6] Some of our sister circuits also have taken the view that a self-executing provision of a state's constitution may constitute a sufficiently reasonable, certain and adequate remedy to satisfy the Fifth Amendment and, under *Williamson County*, is likewise sufficient to require the plaintiff to proceed in state court before raising a federal takings claim. *See Bateman v. City of West Bountiful*, 89 F.3d 704, 708-09 (10th Cir. 1996) ("A property owner's cause of action for inverse condemnation is provided by Article I, section 22 of the Utah Constitution. This constitutional provision is self-executing . . . . [The plaintiff]'s failure to avail himself of the procedure renders his claim premature."); *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995) (holding that when a state's constitution provides a "straightforward takings clause," even when no case provides compensation for the precise kind of taking alleged by the plaintiff, the plaintiff "is still required to look to the state for

(continued...)

claims that, despite the clear language in *Roe*, Illinois will *not* provide a remedy. He bases this assertion on his reading of Illinois precedent establishing the manner in which claims under § 15 ordinarily proceed, that is, by way of a mandamus action to force the municipality to institute eminent domain proceedings, *see, e.g.*, *Luperini*, 637 N.E.2d at 1268**.** Whatever subsequent Illinois cases say about the *usual method* a landowner might use to obtain compensation, *Roe* indicates that the courts of the state will find a remedy if a taking has occurred. Based on this clear statement by the Supreme Court of Illinois that a remedy is available to injured landowners, we conclude that Mr. Peters "has not shown that the inverse condemnation procedure is unavailable or inadequate, and until [he] has utilized that procedure, [his] taking claim is premature." *Williamson County*, 473 U.S. at 197.[7]

---

[6] (...continued)

compensation before its takings claim will lie"). *But see Asociación de Subscripción Conjunta del Seguro de Responsibilidad Obligatorio v. Flores Galarza*, 484 F.3d 1 (1st Cir. 2007) ("In our view, [reasonable, certain and adequate procedures] do not include litigation of a state takings claim or any general remedial cause of action under state law. Rather, the Supreme Court must have had in mind only those procedures specifically designed by the state to avoid constitutional injury in the first instance by providing a means for a plaintiff to obtain compensation for the government's taking of property.").

[7] As we noted in *Rockstead v. City of Crystal Lake*, 486 F.3d 963 (7th Cir. 2007), when "the obstacle to [just compensation] is a state common law doctrine," a plaintiff may face greater difficulty in demonstrating that state procedures will fail him. *Id.* at 966. "Judges do not make statutes or constitutions and

(continued...)

## C.

Finally, Mr. Peters contends that *Williamson County*'s requirements are prudential and insufficient to support the district court's decision that it lacked subject matter jurisdiction in this case. He relies largely on Chief Justice Rehnquist's concurring opinion in *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 348-52 (2005), which, Mr. Peters contends, "exposed" *Williamson County*'s "fundamental and untenable doctrinal flaws." Appellant's Br. at 10 n.2.

*Williamson County*'s ripeness requirements are prudential in nature. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733-34 & n.7 (1997); *Forseth*, 199 F.3d at 368 n.7. The prudential character of the *Williamson County* requirements do not, however, give the lower federal courts license to disregard them. The Supreme Court has determined, as a matter of law, when federal takings claims are ripe and has set forth a rule in *Williamson County* that this court is bound to follow. In the absence of compliance with *Williamson County*, the district court correctly dismissed this action.

### Conclusion

We affirm the judgment of the district court.

AFFIRMED

---

[7] (...continued)
cannot change them, but they do make, and they can—and do—change, common law doctrines." *Id.*

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*