In the

# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 16-3736 & 16-3834

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 139
and INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL
420,

*Plaintiffs-Appellants / Cross-Appellees*,

*v.*

BRAD D. SCHIMEL and JAMES R. SCOTT,

*Defendants-Appellees / Cross-Appellants*.

_____

Appeals from the United States District Court for the
Eastern District of Wisconsin, Milwaukee Division.
No. 16-CV-590-JPS — **J.P. Stadtmueller**, *Judge*.

_____

ARGUED JUNE 2, 2017 — DECIDED JULY 12, 2017

_____

Before FLAUM, EASTERBROOK, and KANNE, *Circuit Judges*.

FLAUM, *Circuit Judge*. The International Union of Operat-
ing Engineers, Local 139 and Local 420 ("IUOE"), challenged
Wisconsin's right-to-work law. The district court determined
that this Court's decision upholding Indiana's nearly-identical

law, *Sweeney v. Pence*, 767 F.3d 654 (7th Cir. 2014), controlled in this case, and the court dismissed IUOE's complaint with prejudice. For the following reasons, we affirm.

## I. Background

### A. The *Sweeney* Decision

In 2012, Indiana passed a right-to-work law that prohibits agreements requiring people to:

> (1) become or remain a member of a labor organization; [or]
>
> (2) pay dues, fees, assessments, or other charges of any kind or amount to a labor organization
>
> …
>
> as a condition of employment or continuation of employment.

Ind. Code § 22–6–6–8. Union members in Indiana challenged this right-to-work law as preempted by the National Labor Relations Act ("NLRA").[1] However, after a comprehensive

---

[1] The NLRA provides:

> It shall be an unfair labor practice for an employer … to encourage or discourage membership in any labor organization: *Provided*, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization … to require as a condition of employment membership therein … .

29 U.S.C. § 158(a)(3). The Act also states:

> Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of

discussion of the NLRA's legislative history and relevant Supreme Court precedent, this Court determined that the NLRA did not preempt Indiana's right-to-work law, even though that law prohibits the payment of any dues or fees to unions. *See Sweeney*, 767 F.3d at 661 (The NLRA's "express allowance of state laws prohibiting agreements requiring *membership* in a labor organization as a condition of employment necessarily permits state laws prohibiting agreements that require employees to pay Representation Fees") (quotation marks omitted); *see generally id.* at 658–665. We also determined that the enactment of Indiana's law did not effect a taking in violation of the Fifth Amendment: Although the NLRA requires unions to provide fair representation to non-paying members of the bargaining unit, the unions are "justly compensated by federal law's grant to [unions] the right to bargain exclusively with … employer[s]." *Id.* at 666.

### B. Wisconsin Act 1

After *Sweeney* issued, Wisconsin enacted Act 1, which states:

> No person may require, as a condition of obtaining or continuing employment, an individual to do any of the following:
>
> …

---

employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

29 U.S.C. § 164(b). In *Sweeney*, we discussed the effect of the NLRA's preemption framework on right-to-work laws prohibiting the formation of any union-security agreements. *See generally* 767 F.3d at 658–665.

2. Become or remain a member of a labor organ-
ization [or]

3. Pay any dues, fees, assessments, or other
charges or expenses of any kind or amount, or
provide anything of value, to a labor organiza-
tion.

Wis. Stat. § 111.04(3)(a). IUOE—which had entered into sev-
eral conditional union-security agreements with employers—
filed suit against various Wisconsin officials ("Wisconsin"),
seeking to void the provision of Act 1 that prohibits forming
union-security agreements of any kind. IUOE argued that
Act 1 was preempted by the same NLRA provisions at issue
in *Sweeney* and that Act 1 unconstitutionally takes affected un-
ions' property without just compensation. The district court
entered judgment on the pleadings in favor of Wisconsin and
dismissed the case with prejudice. These cross-appeals fol-
lowed.

## II. Discussion

We review de novo the district court's order granting
judgment on the pleadings. *Barr v. Bd. of Trs. of W. Ill. Univ.*,
796 F.3d 837, 839 (7th Cir. 2015) (citations omitted).

### A. *Sweeney* Remains Good Law

IUOE acknowledged before the district court and con-
cedes on appeal that *Sweeney* controls the preemption analysis
in this case and dictates an outcome in favor of Wisconsin.
*Sweeney* dealt with, and disposed of, IUOE's preemption and
Takings Clause arguments with respect to a substantively-
identical Indiana law. Thus, IUOE's only remaining argument
on appeal is that *Sweeney* was wrongly decided and should be
overturned. "We do not take lightly suggestions to overrule

circuit precedent," *Chi. Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Steinberg*, 32 F.3d 269, 272 (7th Cir. 1994), and therefore "require a 'compelling reason'" to do so, *United States v. Kendrick*, 647 F.3d 732, 734 (7th Cir. 2011) (quoting *Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006)).

Beyond re-arguing the merits of the *Sweeney* decision, IUOE notes that Chief Judge Wood published a strong dissent in that case, *see Sweeney*, 767 F.3d at 671–85 (Wood, C.J., dissenting), and that this Court's vote to rehear *Sweeney* en banc was close, *see Sweeney v. Pence*, No. 13-1264 (7th Cir. Jan 13, 2015). Such facts, however, are not "compelling reasons" to overturn a recent decision. *See Santos*, 461 F.3d at 894 ("the previous decision [having been] upheld by a 5–5 vote" was not a compelling reason to overturn it); *Kendrick*, 647 F.3d at 734 ("a solid defense of the arguments that we rejected in [prior cases] … does not amount to a compelling reason to revisit" those cases) (citation omitted). Furthermore, IUOE points to no intervening developments in statutory, Supreme Court, or even intermediate-appellate-court law between *Sweeney* and today that undermine *Sweeney*'s validity. In sum, IUOE does not provide any compelling reason to revisit *Sweeney*, and we decline to do so.

### B. Takings Clause Ripeness

IUOE argues that Act 1 takes affected unions' property without just compensation in violation of the Fifth Amendment. IUOE brought this claim in federal district court without first seeking just compensation in the state courts. The district court acknowledged this fact and noted that such claims are generally unripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172,

195 (1985). It determined that IUOE's takings claim was nevertheless ripe because IUOE had made a pre-enforcement facial challenge to Act 1, and dismissed the complaint with prejudice. On cross-appeal, Wisconsin argues that the district court should have ruled that this claim was unripe and should have dismissed it without prejudice.

Generally, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* Though the record reveals no regulatory procedure for handling Act 1-based takings claims—Wisconsin asserts that the Act does not create a takings issue in the first place—we have determined that the *state courts* can provide an adequate route for seeking just compensation, *see Sorrentino v. Godinez*, 777 F.3d 410, 413–14 (7th Cir. 2015) (Illinois Court of Claims an adequate forum for takings claim though incapable of granting the equitable relief sought); *see also Forseth v. Vill. of Sussex*, 199 F.3d 363, 372–73 (7th Cir. 2000) (noting a variety of available Wisconsin state-court review mechanisms), and thus must be utilized, when available, before seeking relief in federal court. However, this Court has recognized two exceptions to *Williamson*'s ripeness requirement: "one for pre-enforcement facial challenges and one for situations in which relief is not available in state court." *Muscarello v. Ogle Cty. Bd. of Comm'rs*, 610 F.3d 416, 422 (7th Cir. 2010).[2]

---

[2] IUOE also urges this Court to acknowledge a third exception to *Williamson*: that takings for a *private* use do not need to be litigated in state court first. However, *Muscarello* clearly states that this Court recognizes the facial-challenge and futility exceptions, and does not allude to any other possible exceptions. The case on which IUOE relies, *Peters v. Village*

IUOE argues that it has satisfied both of these exceptions and that its takings claim was ripe when it filed suit in the district court. With respect to the facial-challenge exception, Wisconsin responds that IUOE could not have been making such a challenge to Act 1, since IUOE's complaint contained the phrase "as applied." However, the complaint reads, "[*a*]*s applied to unions covered by the NLRA*, [Act 1] effects an unconstitutional taking." (emphasis added). In context, it is clear that the phrase "as applied" was not meant to limit IUOE to making an as-applied challenge to Act 1; IUOE used this phrase to invoke the rights of all unions covered by Act 1 and the NLRA. Regardless, the Supreme Court has instructed that, in determining whether a challenge is facial or as-applied, "[t]he label is not what matters. The important point is

---

*of Clifton*, 498 F.3d 727 (7th Cir. 2007), does not support its argument. In that case, we elaborated on the futility exception, and noted that, "[d]espite the strong presumption that damages, not injunctive relief, is the appropriate remedy in a Takings Clause action, our case law does acknowledge that there are limited circumstances in which injunctive relief is available. For instance, it is well accepted that, when the government has taken property for a private, rather than a public, use, injunctive or declaratory relief may be appropriate." *Id.* at 732 (citing *Daniels v. Area Plan Comm'n of Allen Cty.*, 306 F.3d 445, 457 n.11 (7th Cir. 2002)). However, neither *Peters* nor *Daniels* states that potential injunctive relief for private-use takings is sufficient by itself to relieve litigants of *Williamson*'s exhaustion requirement. In *Daniels*, we observed that "the district court should accept jurisdiction over takings claims for injunctive relief *in the few cases where a Claims Court remedy is so inadequate* that the plaintiff would not be justly compensated." 306 F.3d at 457 n.11 (emphasis added) (quoting *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 613 (D.C. Cir. 1992)) (internal quotation marks omitted). *Daniels*'s focus on the inadequacy of remedies indicates that the futility exception to *Williamson* would cover a valid takings claim seeking non-monetary relief, not a new, standalone exception.

that plaintiffs' claim and the relief that would follow … reach beyond the particular circumstances of these plaintiffs." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010).[3] In this case, IUOE's claim that Act 1 works an unconstitutional taking from *all* affected unions, and the relief IUOE seeks—invalidation of parts of Act 1—both clearly "reach beyond [IUOE's] particular circumstances." *Id.* Further, the panel's discussions of the Takings Clause issue in *Sweeney* indicate that an unconstitutional taking would arise, if at all, from the statutory language of the right‑to‑work statutes or the NLRA, *see* 767 F.3d at 665–66 (rejecting a remedy of "strik[ing] down Indiana's right‑to‑work *statute*") (emphasis added); *id.* at 683 (Wood, C.J., dissenting) (noting that "plaintiffs have argued throughout that the Indiana *statute* is unconstitutional," and describing "the confiscatory nature of the Indiana *statute*") (emphases added), a theory to which a facial challenge would have been well‑suited.

---

[3] Wisconsin argues that IUOE cannot be making a facial challenge to Act 1, as IUOE does not seek to invalidate every provision of Act 1. However, *Reed* undercuts that line of argument. In that case, the parties disagreed as to whether a First Amendment‑based challenge to Washington State's Public Records Act ("PRA") was facial or as‑applied. 561 U.S. at 191. As here, the complaint alleged that the law "violates the First Amendment *as applied* to referendum petitions." *Id.* at 194 (emphasis added). Despite the use of the phrase "as applied," the Supreme Court reasoned that the complaint "obviously has characteristics of both [facial and as‑applied challenges]: The claim is 'as applied' in the sense that it does not seek to strike the PRA in all its applications, but only to the extent it covers referendum petitions. The claim is 'facial' in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions." *Id.* As a result, the plaintiffs in *Reed* had to "satisfy … standards for a facial challenge to the extent of that reach." *Id.* Likewise, IUOE's claim is facial, and thus ripe for adjudication, in that it challenges Act 1 as it affects all unions elected to represent bargaining units.

Likewise, in this case, IUOE asserts that the provision of Act 1 that forbids all union-security agreements amounts to an unconstitutional taking on its face. Thus, the district court correctly construed this claim as a "pre-enforcement facial challenge" to Act 1, *Muscarello*, 610 F.3d at 422,[4] determined that the takings claim was ripe under that *Williamson* exception,[5] and dismissed the claim with prejudice in light of *Sweeney*.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4] To the extent IUOE's takings claim challenges Act 1 as not "substantially advanc[ing] legitimate state interests," the Supreme Court has determined that such a challenge is properly understood as a due-process inquiry that "has no proper place in … takings jurisprudence." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 540 (2005) (citations omitted).

[5] Because we hold that IUOE's claim was ripe as a pre-enforcement facial challenge to Act 1, we need not decide whether adequate relief would have been available in the Wisconsin state courts.