In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1637

SGB Financial Services, Inc., doing business
as Timber Ridge Apartments,

Plaintiff-Appellant,

v.

Consolidated City of Indianapolis-Marion
County, Indiana, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 98-977-C H/G--David F. Hamilton, Judge.

Argued December 5, 2000--Decided December 20, 2000

Before Posner, Easterbrook, and Evans, Circuit Judges.

   Easterbrook, Circuit Judge.  Indianapolis put the Timber Ridge Apartments on its "acquisition list" of properties that the city plans to acquire (by negotiation or condemnation) eventually. SGB Financial Services, which owns the 26 buildings in the Timber Ridge complex, asked Indianapolis either to disclaim any interest in acquiring the property or to complete the transaction swiftly; when the city failed to do either, SGB brought this suit under 42 U.S.C. sec.1983, contending that the city had accomplished a taking just by listing the apartments. SGB offered to prove that it had become unable to sell the buildings at a profit, or borrow funds to improve them, because potential buyers and lenders feared that Indianapolis would acquire the property at a low price. This sounds like an argument that Indiana courts do not award full market value in condemnation proceedings, for it must be the anticipated buyout price rather than a property's simple presence on the list that affects how lenders and potential purchasers deal with owners in the meantime. If the state pays full market price in the event of an acquisition, then buyers will be willing to pay the market price in prior

transactions, and owners will make (and lenders will fund) all cost-justified improvements whether or not an acquisition occurs. If, on the other hand, state courts systematically award inadequate compensation, then prices of property will fall in anticipation, whether or not the property appears on a formal list. (The mayor's statement at a press conference that the city was looking into acquiring a parcel for a highway or school would have the same effect as listing.) But the district court did not decide whether anticipation of an improperly low award in the future could support relief now; instead the court dismissed the case because Indiana offers SGB a forum in which to pursue an inverse-condemnation claim. 2000 U.S. Dist. Lexis 7204 (S.D. Ind. Feb. 7, 2000).

Indiana has authorized inverse-condemnation actions (that is, property owners' suits seeking compensation for what they say are takings). I.C. sec.32-11-1-12. Because the takings clause of the fifth amendment (applied to the states by the fourteenth, see Chicago, Burlington & Quincy R.R. v. Chicago, 166 U.S. 226 (1897)), does not forbid takings but simply requires "just compensation" for the property, a state violates the Constitution only by refusing to pay up. If the state offers a forum that will decide whether a taking has occurred and, if so, will fix just compensation--that is, if the state entertains inverse-condemnation suits--it is hard to see how the state could be thought in violation of the Constitution. And if the state is not violating the Constitution, there is no basis for relief under sec.1983. This is the chain of reasoning behind Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985), which held that a takings claim does not accrue until available state remedies have been tried and proven futile. "Available" is an important qualifier. If the state does not offer just compensation even for admitted takings then there is a real constitutional problem. But Indiana offers financial relief via inverse-condemnation suits.

SGB argues, however, that Indiana's courts are not open to the kind of claim it wants to make. For this proposition SGB relies exclusively on Reel Pipe & Valve Co. v. Indianapolis, 633 N.E.2d 274 (Ind. App. 1994), where a panel of the state's intermediate appellate court rejected an inverse-condemnation claim based on a property's presence on Indianapolis's acquisition list. According to SGB, Reel Pipe holds that as a matter of law placement on an acquisition list cannot be a taking; the city, by contrast, insists that the opinion holds only that a

particular property owner had not established a financial loss. We need not decide which reading is right--and not only because the Supreme Court of Indiana has yet to speak. (That court's denial of transfer in Reel Pipe, like a denial of certiorari by the Supreme Court of the United States, does not telegraph any particular view of the merits.) SGB treats state remedies as available only if the property owner is likely to prevail; but that is not what Williamson County says. Its stands instead for the proposition that there is no uncompensated taking--that is, nothing to litigate under sec.1983--until the state has established (a) what it has taken, and (b) its refusal to pay "just compensation." A final decision about the disposition of the plaintiff's property, coupled with a lack of any financial remedy (for example, the absence of inverse-condemnation actions in state court) could satisfy both (a) and (b); but efforts to predict how state courts will handle a particular inverse-condemnation suit are bootless. Instead of asking a federal judge to guess what a state court is likely to do, why not ask the state court?

Williamson County is just one among many federal doctrines routing suits to state court. Sometimes, as with Williamson County, this is justified because there is no federal wrong unless the state judicial system is unavailable. See, e.g., Parratt v. Taylor, 451 U.S. 527 (1981); Hudson v. Palmer, 468 U.S. 517, 530-36 (1984). Sometimes it is justified because state actors must be given an opportunity to consider the federal claims and prevent (or correct) errors; this is a principal justification of exhaustion rules such as the one in 28 U.S.C. sec.2254(c). No one believes that a criminal defendant may bypass state court and present his claims to federal court in the first instance just because in some other case the state judiciary has rejected on the merits a legal argument similar to the one the prisoner wants to make. Similarly, we held in Perez v. Wisconsin Department of Corrections, 182 F.3d 532 (7th Cir. 1999), that state remedies do not become unavailable for purposes of 42 U.S.C. sec.1997e(a) just because resort to them may fail: "As for the possibility that administrative remedies could be declared futile ex ante, without ever being tried: what would be the point of asking judges to be seers? Then the simplicity of sec.1997e(a) would be lost, and instead of requiring exhaustion of administrative remedies it would lead to guesswork about counterfactual situations. No one can know whether administrative requests will be futile; the only way to find out is to try." 182 F.3d at 536

(emphasis in original).

The Tax Injunction Act, 28 U.S.C. sec.1341, may be the federal statute closest in spirit to the idea behind Williamson County. Section 1341 provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Does a state offer a "plain" or "speedy" remedy if its courts have rejected on the merits similar arguments by other taxpayers? The answer is yes. See Rosewell v. LaSalle National Bank, 450 U.S. 503, 514–15 (1981); Folio v. Clarksburg, 134 F.3d 1211 (4th Cir. 1998); Carrier Corp. v. Perez, 677 F.2d 162 (1st Cir. 1982); Cities Service Gas Co. v. Oklahoma Tax Commission, 656 F.2d 584 (10th Cir. 1981). The right question, these decisions conclude, is whether the state courts are available to receive arguments and resolve disputes; that the federal plaintiff likely would lose on the merits is neither here nor there. See also Sacks Brothers Loan Co. v. Cunningham, 578 F.2d 172 (7th Cir. 1978). We can't see any reason why a state's stock of precedents would make state court unavailable for purposes of Williamson County even though that same court, with equally adverse precedents, offers a "plain, speedy and efficient remedy" for purposes of sec.1341. In principle one could imagine a precedent with the same effect as the lack of an inverse-condemnation law. Suppose, for example, the Supreme Court of Indiana had held that regulatory takings as a class are never compensable under the state's inverse-condemnation law. But SGB does not contend that Indiana has a blanket rule, of either statutory or judicial creation, that would block all consideration of a claim that regulatory action amounts to a taking.

Federal inverse-condemnation proceedings, like federal suits against tax collections, can interfere with state and local programs and revenues. If as Williamson County holds an inverse-condemnation proceeding normally belongs in state court, which can determine whether the state is willing to pay compensation for any taking, the proceeding belongs in state court even if the plaintiff is convinced that it will lose. Otherwise we would have a curious allocation of business: strong inverse-condemnation actions (those on which the property owner is most likely to prevail) would be routed to state court, while weak claims (those on which similar claims have been litigated and lost already) would be routed to federal court. That

allocation has little to commend it, and
Williamson County (plus the analogy to the Tax
Injunction Act) to condemn it.

Affirmed