In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2319

FLYING J INC.,

*Plaintiff-Appellant,*

*v.*

CITY OF NEW HAVEN, a political subdivision of the state of
Indiana, BRIAN YOH, individually and as Plan Director and
Zoning Administrator of the City of New Haven, and
TERRY E. MCDONALD, individually and as mayor of the City
of New Haven,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:07-CV-237 RM—**Robert L. Miller, Jr.**, *Chief Judge.*

ARGUED NOVEMBER 4, 2008—DECIDED DECEMBER 5, 2008

Before BAUER, FLAUM, and WILLIAMS, *Circuit Judges*.

FLAUM, *Circuit Judge.* Flying J purchased 53.3 acres in
New Haven, Indiana in the hopes of constructing a travel
plaza and various other developments, including hotels

and restaurants, on that land. Unfortunately, the New Haven Plan Commission was not as sanguine about the development plans, and after two adverse zoning decisions Flying J sued New Haven in Indiana state court. After losing in the trial court, Flying J prevailed on appeal, and the Indiana Supreme Court's decision not to review the case made Flying J's victory final. The victory proved to be short-lived, however. As the state court litigation was winding down, New Haven amended its zoning ordinance and limited all service stations (such as Flying J's travel plaza) to two acres in size. Needless to say, Flying J's proposed development was not permitted under the amended ordinance. Flying J then filed suit in federal court, alleging that New Haven's actions violated their rights to equal protection and due process. New Haven then filed a motion to dismiss for lack of subject matter jurisdiction, charging that the case was not ripe, and a motion to dismiss for failure to state a claim. The district court found that the controversy was ripe and thus that it had subject matter jurisdiction over the case, but granted the motion to dismiss for failure to state a claim.

Flying J appeals this decision, and for the following reasons we affirm the district court's dismissal.

## I. Background

Flying J develops travel plazas, facilities that offer food, fuel, groceries, financial services, and other services to truck drivers and other travelers. Flying J was planning on constructing a new travel plaza on 53.3 acres that Flying J purchased in New Haven, Indiana. The land is designated

as a C-1(P) General Commercial Planned District, which permits a variety of uses including automobile service stations, stores, businesses, general retail, food service, motels, and various other uses. Flying J's proposed use of the site would include a 17.7 acre travel plaza and room to expand with other developments, including hotels and restaurants.

To start the development process, in 2005 Flying J made a presentation to Brian Yoh, the Plan Director and Zoning Administrator for the City of New Haven. Yoh determined that some of the proposed uses were not permitted in property with a C-1 zoning designation, and he informed Flying J of this fact shortly after they gave their initial presentation. Displeased, Flying J appealed to the Board of Zoning Appeals, which affirmed Yoh's decision. Flying J then took the matter to the Indiana state courts. The Circuit Court of Allen County granted summary judgment for the Board of Zoning Appeals on September 23, 2005. Flying J then appealed to the Indiana Court of Appeals, and in 2006 that court reversed the circuit court and instructed it to enter summary judgment for Flying J, concluding that Yoh and the Board of Zoning Appeals had erroneously ruled that some of Flying J's proposed uses were not permitted in property zoned C-1. The Board of Zoning Appeals unsuccessfully filed petitions for rehearing and for transfer to the Indiana Supreme Court, and the appellate court decision became final on May 3, 2007.

In light of this ruling, Flying J's representatives met with Yoh and other city officials in late 2006 and 2007 to discuss how they could move forward with their development

plans. At this time, and unbeknownst to Flying J, the City of New Haven was moving forward with plans to amend the zoning ordinance in a way that would eliminate Flying J's plans to construct a service center on the property. The amendment limited "service stations" in property zoned C-1 to two acres, an amendment that apparently would not affect any of the existing service stations in the area. The City Plan Commission conducted a public hearing on the change on February 20 but did not give Flying J specific notice of the hearing. The Common Council of the City of New Haven voted to adopt the amendment on February 27, 2007. Flying J, once again, was not given notice of this meeting. At a third meeting two weeks later, the Common Council again voted to adopt the amendment. Again, Flying J did not receive notice of the meeting.

Flying J in fact learned about the ordinance through litigation, when the Zoning Board filed a Motion to Correct Error with the Circuit Court, claiming that Flying J's proposed use was permitted only under the old zoning plan, in effect when they first applied in 2005, but not the new zoning plan. The Circuit Court denied this motion, but nevertheless in August 2007, Yoh informed Flying J that its application for development of its 53.3 acre tract in New Haven must comply with the amended zoning ordinance.

On appeal, Flying J makes additional factual allegations, which they claim are consistent with the general tenor of the complaint and thus are appropriate to add at the appellate stage. These facts allege conflicts of interest on the part of Ronald Steinman, a member of the New Haven Common Council who voted for the amended ordinance,

and Michelle Hill, a member of the Board of Zoning Appeals. According to the allegations, both separately own parcels of land near the 53.3 acres that Flying J is planning to develop. Flying J argues that its proposed development would affect the value of the property owned by Hill and Steinman, and that this conflict explains New Haven's vigilance in attempting to stop the development of the travel plaza.[1]

On September 11, 2007, Flying J filed suit in federal court alleging that the City of New Haven, Yoh, and the city's mayor, Terry McDonald (collectively "New Haven") had violated its rights to substantive due process, procedural due process, and equal protection under both the United States Constitution and the Indiana Constitution, and seeking declaratory relief and damages. New Haven responded by filing a motion to dismiss for lack of subject matter jurisdiction, arguing that Flying J was actually positing a Takings Clause claim that was not yet ripe, and an alternative motion to dismiss for failure to state a claim

---

[1] New Haven objects to the inclusion of these facts in the appeal because they lack record support and were not presented in the complaint to the district court. However, recognizing the early procedural stage of this case and the need to give the plaintiff the benefit of the broad Rule 12(b)(6) standard, the additional facts can be presented as long as they are consistent with the complaint. *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992). Given that Flying J's complaint focuses on accusations of bias and animus on the part of various administrators from New Haven, these additional facts are generally consistent with the complaint and can be presented here.

under Rule 12(b)(6). On April 28, 2008, the district court granted the city's Rule 12(b)(6) motion. This appeal followed.

## II. Discussion

This appeal involves two issues. First, New Haven challenges the subject matter jurisdiction of this court, arguing that Flying J's constitutional claims are actually takings claims, and that because Flying J has not gone through the process for receiving compensation from the city for the alleged taking the claim is not ripe. Flying J challenges the district court's dismissal of the case under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. We take each argument in turn.

### A. Whether the district court improperly assumed subject matter jurisdiction over the case in violation of the ripeness requirements of *Williamson County Regional Planning Commission v. Hamilton Bank.*

As an initial matter, New Haven argues that this court lacks subject matter jurisdiction over the case because Flying J is really asserting a takings claim cloaked as an equal protection claim, and that because Flying J has not exhausted its zoning application or its state remedies the case is not ripe. The Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank* holds that in land use cases "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged

with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. 172, 186 (1985). Even in cases where a developer's proposed use is clearly at odds with local zoning ordinances, the developer must first seek a variance in the local zoning laws and then pursue whatever state court remedies are available before filing a takings claim in federal court. *Id.* at 193-94. The rationale for this rule is that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes the taking of property without just compensation." *Id.* at 194. If a state has a procedure in place to compensate landowners for takings, regulatory and otherwise, then the property owner's Fifth Amendment rights have not been violated until the state process is completed and the owner has still been denied just compensation. *Id.* at 195.

This circuit has read *Williamson County* broadly, "rejecting attempts to label 'takings' claims as 'equal protection' claims and thus requiring 'ripeness.'" *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). This circuit also applies the ripeness requirements to most claims labeled as "substantive due process" or "procedural due process" claims. *Id.* However, courts in this circuit have recognized an exception for "*bona fide* equal protection claims," and held that, in some circumstances, land use cases raising equal protection issues are not subject to *Williamson County*'s ripeness requirements. *Id.* at 370. Litigants making these claims, however, must place them into one of two categories, pleading either: "(1) the malicious conduct of a government agent, in other words, conduct that evidences a spiteful effort to 'get' him for reasons unrelated to any

legitimate state objective; or (2) circumstances, such as prayer for equitable relief and a claim that would evaporate if the government body treated everyone equally that sufficiently suggest that the plaintiff has not raised just a single takings claim with different disguises." *Id.* at 371 (internal quotation marks and citations omitted).

New Haven raises this issue in their reply brief, after raising it in their motion to dismiss to the district court. The city argues that because Flying J has not applied for a variance or gone through the state procedures for seeking compensation for the taking, the issue is not ripe for review and accordingly this court lacks subject matter jurisdiction. Flying J responds that the district court determined that the ripeness requirements of *Williamson County* did not apply and that because New Haven did not cross-appeal the issue they are precluded from bringing it up here. This last assertion is incorrect, however, because ripeness "when it implicates the possibility of this Court issuing an advisory opinion, is a question of subject matter jurisdiction under the case-or-controversy requirement." *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008). The point of *Williamson County* is that there is no case or controversy within the meaning of Article III until the plaintiff has pursued all available remedies in state court, since zoning boards are capable of granting variances from the challenged zoning ordinance, and local authorities are capable of granting compensation. *See Sprint Spectrum v. City of Carmel, Ind.*, 361 F.3d 998, 1004 (7th Cir. 2004). New Haven's argument thus concerns this court's subject matter jurisdiction over the appeal. We are obliged to consider

that at any point in the litigation. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 935 (7th Cir. 2008).

Accepting all well-pleaded facts as true, however, it appears that Flying J has presented a bona fide equal protection claim. Flying J alleges that New Haven has engaged in costly and protracted litigation in an effort to draw out the application process for Flying J, covertly passed an amended zoning ordinance that invalidated the results of the litigation after the city lost, and that it wrote the ordinance in such a way that it would only affect Flying J and no other service station owners in the area. Flying J has also presented additional allegations to the appellate court, arguing that various members of the Common Council and the Plan Commission have conflicts of interest because they own parcels of land around the proposed development. Without passing judgment on the ultimate viability of these allegations, they are sufficient to allege that the ordinance was passed because of ill-will or malice toward Flying J, and thus fit within the first of the two categories of bona fide equal protection violations.

New Haven claims that recent decisions from this circuit, most notably *Patel v. City of Chicago*, 383 F.3d 569 (7th Cir. 2004), have further narrowed the window of equal protection claims. *Patel* recognized the validity of bona fide equal protection claims, however. *Id.* at 573. The opinion did hold that if a plaintiff only alleges an equal protection violation based on depressed property values, and the parties file suit primarily for relief from the operation of eminent domain powers, then their claim is properly labeled a takings claim rather than an equal protection claim. *Id.*

However, while the plaintiffs in *Patel* alleged that the city ordinance singled out their parcels for acquisition through eminent domain, this court was uncertain about the precise sort of equal protection claim that the plaintiffs in that case were raising. *Id.* at 572 ("[T]hey appear to be claiming that the ordinance is a law that rests on wholly irrational distinctions, presumably between their properties and all others in the city. Or they may in part be asserting the type of equal protection claim that arises when a party is subject to 'a spiteful effort to "get" him for reasons wholly unrelated to any government objective.'") (internal citations omitted). We concluded, based on the asserted injury and the requested relief, that the plaintiffs were essentially asserting a takings claim recast as an equal protection claim. *Id.* at 573-74.

The complaint in this case, however, more definitely alleges the sort of "conduct that evidences a spiteful effort to 'get' him" that serves as an exception to the ripeness requirements of *Williamson County*. Specifically, Flying J alleges that the city has improperly denied its development plan and covertly drafted, noticed and passed an ordinance that denies the company the right to develop its property in order to void the result of earlier Indiana court case. The complaint thus alleges the sort of ill-will and spiteful conduct that brings this case within the ambit of *Forseth*'s exception to the requirements of *Williamson County*. Accordingly, we affirm the district court's determination that the ripeness requirements of *Williamson County* do not apply to the present case.

**B. Whether the district court properly dismissed the case for failure to state a claim under Rule 12(b)(6).**

The next issue is whether the district court properly dismissed the suit for failing to state a claim under Rule 12(b)(6). The district court dismissed the complaint for failure to state a claim after concluding that Flying J had not pled sufficient facts to overcome the presumption of rationality attached to government action and accordingly had not pled the elements of its "class of one" equal protection claim. In so doing, the district court went through a two-step analysis. First, the district court claimed that in assessing a class of one equal protection claim at the Rule 12(b)(6) stage, the court should presume the rationality of the law. *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992). The district court then proceeded to analyze the possible justifications for the ordinance, in particular the need to control the secondary impact of large service stations. The district court concluded that while this particular amendment to the zoning ordinance was adopted in response to Flying J's plans to construct a travel plaza on the land it had purchased in New Haven, such a generally applicable zoning amendment could be adopted because of a single proposed development. *Pro-Eco, Inc. v. Board of Commissioners of Jay County, Ind.*, 57 F.3d 505, 515 (7th Cir. 1995). The district court then proceeded to Flying J's complaint, and determined that rather than provide facts that negated any rational basis for the amendment, Flying J had proceeded under the theory that the amended zoning ordinance was adopted out of animus for Flying J and its development plans, and as a way for the city to avoid the consequences

of the Indiana Court of Appeals' decision. The district court concluded, however, that because of this court's precedent in *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005), evidence of animus was insufficient to negate the hypothesized justifications for the zoning ordinance, and accordingly that Flying J had not pled sufficient facts to overcome the presumption of rationality that accompanies the city's action.

Flying J now argues that the district court committed three errors when dismissing the case. First, the district court incorrectly applied the standard from *Lauth*—which Flying J claims applies only to public employment cases and only at summary judgment—to a Rule 12(b)(6) motion. Second, the district court incorrectly assumed the truth of facts offered to establish the rational basis for the zoning amendment while ignoring evidence that the law was enacted to single out Flying J. Third, the district court ignored the facts from the complaint that established an unequal enforcement claim (that is, that the amended zoning ordinance was only enforced with respect to Flying J) in addition to their unequal enactment claim.

New Haven argues that the district court correctly applied *Lauth*, because that case created a two-step inquiry for class of one equal protection cases, first requiring facts to show that the government action in question could not be connected to any rational basis and then requiring facts to show that the action was motivated by animus. They add that while *Lauth* was not a case decided under Rule 12(b)(6), the opinion signals that its standard can be applied at earlier stages of the litigation. As for Flying J's

claim that the district court improperly assumed a rational basis for the law, New Haven replies that the district court properly followed precedent such as *Pro-Eco* in hypothesizing a rational basis for the law, which Flying J did not plead sufficient facts to overcome, and that it was permissible for the city of New Haven to adopt a generally applicable zoning ordinance in response to a single proposed development. Finally, they argue that the facts in Flying J's complaint establishing animus are merely speculative, and that the actions of the city have a rational basis.

Flying J is correct that *Lauth* concerned a different legal subject matter and had a different procedural posture than the present case, but the district court did not err by citing that case in its ruling on the 12(b)(6) motion. Indeed, the opinion in *Lauth* invites courts to apply the standard that it announced to lawsuits earlier than the summary judgment stage: "Since hypothesis is not proof, this test that we have articulated can often be applied in advance of discovery. It could have been here." *Lauth*, 424 F.3d at 634. This part of the *Lauth* opinion cited *Wroblewski*, the case concerning Rule 12(b)(6) that Flying J claims set the only applicable standard for class of one equal protection claims. Nor is *Lauth* limited to employment litigation, although that was the instant subject matter of the case; rather, the opinion discusses two strands of class of one equal protection claims, rational basis claims and animus claims, and develops a test that can apply uniformly to both types of cases (including cases involving such far-flung topics as liquor license renewals).

*Lauth* creates a standard that "a plaintiff who does not belong to any 'suspect' (that is, favored) class—by defini-

tion, the situation of a class-of-one plaintiff—must, to prevail, negative any reasonably conceivable state of facts that could provide a rational basis for the classification. . . . Animus comes into play only when, no rational reason or motive being imaginable for the injurious action taken by the defendant against the plaintiff, the action would be inexplicable unless animus had motivated it." *Id.* This standard harmonizes well with the standard for Rule 12(b)(6) motions in class of one equal protection claims that this circuit developed in *Wroblewski.* That opinion acknowledged the "perplexing situation" that arises when a lawsuit challenging a government action subject only to rational basis review is evaluated under the deferential standard of a Rule 12(b)(6) motion to dismiss. *Wroblewski,* 965 F.2d at 459. The solution is to "take as true all of the complaint's allegations and reasonable inferences that follow, [and then] apply the resulting 'facts' in light of the deferential rational basis standard." *Id.* at 460. *Wroblewski* ultimately holds that to get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Wroblewski,* 965 F.2d at 460.

*Lauth* simply elaborates on the pleading requirements of *Wroblewski.* While district courts continue to presume the truth of all allegations in the complaint when evaluating a Rule 12(b)(6) motion to dismiss, allegations of animus do not overcome the presumption of rationality and the court evaluates those allegations once a plaintiff has pled facts that show the irrationality of the government action in question. This standard reflects the fairly intuitive idea that

a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity.[2] It is only when courts can hypothesize no rational basis for the action that allegations of animus come into play. For instance, the classic example of irrational government action in a class of one equal protection case in this circuit is "an ordinance saying: 'No one whose last name begins with "F" may use a portable sign in front of a 24-hour food shop, but everyone else may.'" *Falls v. Town of Dyer*, 875 F.2d 146, 147 (7th Cir. 1989). What makes the ordinance in the example irrational is not simply the act of singling out, but rather that the singling out is done in such an arbitrary way. *See Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995). Another example, tailored to the present case, would be a zoning ordinance saying that any corporation whose name begins with "F" may not construct any development larger than a half-acre in size.

Flying J's complaint focuses on the allegation that the amended zoning ordinance was adopted in order to avoid the Indiana Court of Appeals decision holding that

---

[2] *Wroblewski* also makes the point that a court can hypothesize a rational basis for an action even if the plaintiff's pleading states facts demonstrating that the action was also motivated by animus. "[I]n this context animosity is not necessarily inconsistent with a rational basis. . . . A city presumably could not reject a bid for work on the grounds of race or sex or political animus; it could, however, decide that it cannot get along productively with someone, at least when that someone has done work on the city's property before." *Wroblewski*, 965 F.2d at 460.

Flying J's travel plaza was permitted under the old zoning ordinance. Flying J's equal protection claim is based on allegations that New Haven "maliciously and spitefully" sought to keep Flying J from developing the travel plaza, "maliciously and spitefully" creating an amended zoning ordinance that was directed at Flying J's proposed development, and "maliciously and spitefully" enforcing the zoning ordinance against Flying J, "all in a manner that was wholly unrelated to legitimate, non-discriminatory governmental objectives." Pl. First Amended Complaint ¶ 64.

Aside from the conclusory statement at the end of the paragraph, however, this allegation does not establish that the amended zoning ordinance is irrational, only that it was adopted in response to Flying J's proposed development. The district court was able to hypothesize several reasons for the amended ordinance, including the need to control the secondary effects of large developments. Flying J argues that the amended zoning ordinance is written in a way that applies only to service stations two acres or larger, and thus that it singles out Flying J. But the ordinance would presumably apply to any developer trying to construct a large-scale service station, and the citation to *Pro-Eco* in the district court's opinion establishes the salient point that a classification is not irrational simply because it was adopted in response to a specific proposed development. *Pro-Eco, Inc.*, 57 F.3d at 515.

Nor are the allegations of a conflict of interest on the part of a member of the New Haven Common Council and a member of the Board of Zoning Appeals sufficient to plead

an equal protection claim. This circuit of course recognizes that questionable behavior on the part of elected officials can give rise to a class of one equal protection claim, as in *Forseth v. Village of Sussex* where a city official premised government approval of a development plan on the plaintiffs' selling a strip of land to a town official at a heavily discounted price. *Forseth*, 199 F.3d at 371. The conflict of interest alleged in this case stems from the officials' ownership of adjoining property, which Flying J claims will be affected by the proposed travel plaza; there is no allegation that city officials sought any personal gain or conditioned any government action on such gain. Instead, the conflict of interest allegations, taken as true, are used as another means of explaining the city's animus to the proposed development. As outlined above, however, such allegations of animus are only considered once the plaintiff has pled sufficient facts to demonstrate the irrationality of the government action that the court is asked to evaluate. By not pleading such facts, Flying J is unable to establish a class of one equal protection claim.

Finally, the district court did not err by construing the plaintiff's equal protection claim as one of unequal enactment and not unequal enforcement. Flying J's complaint does not contain allegations that the zoning ordinance has only been applied to its development while other developers of similarly-sized travel plazas have been granted variances. Rather, the complaint claims that New Haven passed the ordinance in order to apply it to Flying J, and that another similar development is not forthcoming (this, in fact, is the essence of their claim that the amended ordinance singled out Flying J); but without alleging that

New Haven has declined to apply the ordinance to developers of similar properties, Flying J's complaint is properly read as alleging unequal enactment rather than unequal enforcement.

The allegations in Flying J's complaint are thus insufficient to overcome the presumption of rationality that attaches to government actions in a class of one equal protection case, and the district court properly dismissed it for failing to state a claim under Rule 12(b)(6).

### III. Conclusion

For the foregoing reasons, we AFFIRM the opinion of the district court granting the defendants' motion to dismiss.