In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-2818

D.B., by his next friend KURTIS B.,
JENNIFER B., and KURTIS B.,

*Plaintiffs-Appellants,*

*v.*

JAMES KOPP, JAN MORAVITS, GRANT
COUNTY, and GRANT COUNTY
DEPARTMENT OF SOCIAL SERVICES,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 11-cv-773-bbc—**Barbara B. Crabb**, *Judge.*

ARGUED DECEMBER 5, 2012—DECIDED AUGUST 2, 2013

Before MANION and SYKES, *Circuit Judges*, and DARROW,
*District Judge.**

---

* The Honorable Sara L. Darrow, United States District Court for the
Central District of Illinois, sitting by designation.

SYKES, *Circuit Judge.* In September 2010 three young children—six-year-old D.B. and five-year-old twins C.C. and her brother W.C.—were "playing doctor" in D.B.'s backyard in Lancaster, Wisconsin. The twins' mother walked in on this activity and interpreted D.B.'s conduct as a sexual assault of her daughter C.C. She reported the boy's behavior to the Grant County Department of Social Services. The Sheriff's Department also stepped in to respond.

An aggressive investigation ensued, and the Grant County District Attorney eventually filed a petition in circuit court alleging that D.B. had committed a first-degree sexual assault and was in need of public protection or services. The petition was never adjudicated; the case was closed by a consent decree. D.B.'s parents then filed this civil-rights suit on behalf of themselves and their son alleging that Grant County officials overzealously investigated and maliciously prosecuted D.B. for sexual assault. The complaint asserted claims against the investigators, the district attorney, and Grant County for multiple federal constitutional violations and several state-law torts. The district court dismissed the complaint for failure to state a claim.

On appeal the plaintiffs narrow their focus to just two claims: a "class of one" equal-protection claim against the investigators and a related *Monell* claim against Grant County.[1] As to these claims, the complaint alleges that the twins engaged in the same behavior as D.B., but he alone was subjected to intense scrutiny, investigation, and unjustifiable court action.

---

[1] *See Monell v. Dep't of Soc. Servs. of the City of N.Y.,* 436 U.S. 658 (1978).

D.B. was singled out, the complaint alleges, because the twins' father is a "high-ranking local political figure." The district court discerned a rational basis for the difference in treatment and dismissed the claim.

We affirm. Allegations of improper subjective motive are not enough to state a class-of-one equal-protection claim. The complaint must allege sufficient facts to plausibly show that the plaintiff was treated differently from others similarly situated and that the discriminatory treatment was wholly arbitrary and irrational. Here, the complaint alleges an improper subjective purpose—political favoritism—but it also discloses an objective rational basis for the disparate treatment. The twins' mother witnessed D.B.'s conduct and reported it. On the other hand, there was no adult witness to the twins' behavior; they simply admitted to participating in the "doctor" game in the "same manner" as D.B. It's rational to credit a concrete report from an adult eyewitness and discount the generalized admission of a five-year-old. This rational explanation for the difference in treatment defeats the claim.

## I. Background

We take the following facts from the complaint, accept them as true, and draw reasonable inferences in the plaintiffs' favor. *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012). In September 2010 six-year-old D.B. had just concluded extensive medical testing for digestive problems, which included rectal examinations and enemas. On the afternoon of September 12, D.B. and five-year-old twins C.C. and W.C. were in D.B.'s backyard playing "doctor." More

specifically, they were playing "butt doctor," apparently prompted by D.B.'s recent medical experience.

During the "game," D.B. touched C.C.'s bare buttock, although the exact nature of the touching is disputed. D.B. said he touched C.C.'s bare buttock with his finger. The twins' mother thought she saw something different. She walked in on the children, saw the "doctor" game in progress, and "interpreted what she saw as D.B. inserting his finger into C.C.'s anus." She reported the incident to her sister-in-law, who happened to be the regional supervisor in charge of the state agency that administers family and children's services. The sister-in-law in turn notified Jan Moravits, an intake coordinator for the Grant County Department of Social Services. Because the twins' father was a public official in Lancaster, the local police department declined involvement and referred the matter to the Grant County Sheriff's Department.

The Sheriff's Department assigned Deputy James Kopp to investigate, and he and Moravits commenced a "biased" and "haphazard" investigation designed to "embarrass and humiliate six-year-old D.B." and subject "D.B. and his family [to] … public negative stigma." D.B.'s parents retained counsel and forwarded reports and records from D.B.'s doctor, daycare provider, and therapist to the Department of Social Services. An investigator initially concluded that D.B.'s behavior was not cause for intervention, but Moravits overrode that decision and insisted on pursuing the investigation further. Meanwhile, Kopp interviewed the twins, who said they had "touched D.B. in the same manner for which D.B. was being investigated."

D.B.'s parents were summoned to a meeting with Moravits. They pointed to the reports from D.B.'s doctor, daycare provider, and therapist in an effort to show that there was no cause for concern. Moravits "disregarded" these records and said that if D.B. was not prepared to "admit his crime," then "there was no reason to have this meeting." She dismissed D.B.'s parents, telling them to "go home and rethink about bringing D.B. in to her to admit his crimes." She also threatened "to have their children removed if they did not give in to her demands."

D.B.'s parents did not bring their son in to "admit his crimes." Moravits referred the incident to Grant County District Attorney Lisa Riniker as a case of first-degree sexual assault. Moravits also "made an effort to have D.B. register [as a sex offender] when he turns eighteen." Kopp continued to investigate, looking for additional witnesses. He "came up with a former babysitter" who "told a story about D.B. making sexual contact with her." Kopp "cherry-picked" the sitter's story, "ignor[ed] contradictory testimony," and sent a report to Moravits and Riniker recounting the sitter's allegations and concluding that D.B. had committed a fourth-degree sexual assault against the babysitter. Kopp also visited D.B.'s school seeking information about the boy. Although the twins had admitted to Kopp that they had engaged in the same conduct as D.B., neither Kopp nor Moravits investigated them.

Based on this investigation, District Attorney Riniker filed a petition in Grant County Circuit Court alleging that D.B. committed a first-degree sexual assault of a child and was in

need of protection or services.[2] *See* WIS. STAT. §§ 938.13(12) (governing petitions for child protection or services), 948.02(1)(b) (defining the crime of first-degree sexual assault of a child). A petition of this sort initiates an elaborate court process that leads to a range of available dispositional remedies from counseling to agency supervision to removal of the child from the parents' home. *See id.* § 938.345. The petition at issue here was never adjudicated; D.B.'s parents resolved it pursuant to a consent decree, and the case has since been dismissed.[3] *See id.* § 938.32.

---

[2] The complaint and the plaintiffs' brief repeatedly state that the district attorney "charged" D.B. with first-degree sexual assault. In Wisconsin (and, we assume, everywhere else), a six-year-old child cannot be charged or convicted of a crime; nor can a six-year-old be found delinquent for having violated a criminal statute. *See* WIS. STAT. § 938.02(3m) (the term "delinquent" in Chapter 938 refers to a juvenile *10 years of age or older* who has violated any state or federal criminal law). At oral argument plaintiffs' counsel acknowledged that the district attorney did not file a criminal "charge" but rather a petition alleging that D.B. was a child in need of public protection or services because he had committed a delinquent act. *See id.* § 938.13(12) (authorizing the court to adjudicate a child in need of public protection or services if "[t]he juvenile is under 10 years of age and has committed a delinquent act").

Proceedings under Chapter 938 of the Wisconsin Statutes are not criminal proceedings. A dispositional order entered on a Chapter 938 petition—whether adjudicating a juvenile delinquency or ordering protection or services—"is not a conviction of a crime." *Id.* § 938.35(1).

[3] A second petition alleging that D.B. committed disorderly conduct, *see id.* § 947.01(1), was also dismissed pursuant to this consent decree. The second petition was based on the babysitter's allegations.

D.B. and his parents then filed this civil-rights suit against Kopp, Moravits, Riniker, Grant County, and the Grant County Department of Social Services. (The county defendants are the same for purposes of this suit, so we will not distinguish them further.) The complaint alleged that the individual defendants are liable under 42 U.S.C. § 1983 for various federal constitutional violations—deprivation of equal protection, procedural due process, and substantive due process; unlawful seizure; and infliction of cruel and unusual punishment—and also that they committed several state-law torts. The *Monell* claim against the County alleged that the constitutional violations were caused by official county policy or practice. The complaint sought $2 million in compensatory damages and an award of punitive damages.

The defendants moved to dismiss for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). The district court granted the motion but permitted the plaintiffs to file an amended complaint. They did so, and again the defendants moved to dismiss. The district court granted the motion and entered final judgment, holding that Riniker had absolute prosecutorial immunity and that the complaint failed to state a claim for any constitutional violation. The court also dismissed the state-law claims against the County with prejudice and relinquished supplemental jurisdiction over the state-law claims against Kopp and Moravits. This appeal followed.

## II. Analysis

D.B. and his parents challenge only the dismissal of their equal-protection claim against Kopp and Moravits and the

related *Monell* claim against Grant County. To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We review a Rule 12(b)(6) dismissal de novo. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

The complaint alleges that Kopp and Moravits violated D.B.'s rights under the Equal Protection Clause of the Fourteenth Amendment by subjecting him to a heavy-handed and unjustified investigation while letting the twins off scot-free even though they engaged in the same behavior. The plaintiffs also claim that Grant County is on the hook for damages under *Monell* because county policy caused the constitutional violation. *See Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) ("To establish municipal liability [under § 1983 and *Monell*], a plaintiff must show the existence of an official policy or other governmental custom that not only causes but is the moving force behind the deprivation of constitutional rights." (internal quotation marks omitted)).

Both claims rely on "class of one" equal-protection doctrine, which recognizes that the Equal Protection Clause may "give[] rise to a cause of action on behalf of a 'class of one' where the plaintiff d[oes] not allege membership in a class or group" *if* the plaintiff can show "that she has been intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Stated differently, *Olech* holds that the Equal Protection Clause "protect[s] individuals against purely arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes." *Geinosky v. City of Chicago,* 675 F.3d 743, 747 (7th Cir. 2012). The Supreme Court restated this understanding of class-of-one theory in *Engquist v. Oregon Department of Agriculture,* 553 U.S. 591, 601 (2008), although there the Court barred class-of-one claims in the context of public employment, *id.* at 605.

Since *Olech*, however, we have had some difficulty arriving at a stable legal standard for adjudicating class-of-one claims. *See Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 889 (7th Cir. 2012) (en banc) (per curiam). The disagreement in *Del Marcelle* centered on the role of illegitimate motive or improper purpose in class-of-one litigation. The court split three ways. Some members of the court thought the plaintiff should be required to plead and prove that the disparate treatment was motivated by personal ill will or other illegitimate purpose; that is, a purpose unrelated to public duty. *See id.* (Posner, J.) (plurality opinion) (writing for four members of the court). Others expressed the view that personal animus or other improper motive is not an element of the claim but just one way to prove that the defendant's action lacked a rational basis. *See id.* at 913–14 (Wood, J., dissenting) (writing for five members of the court). One member of the court concluded that motive or intent "has no role at all" in class-of-one litigation. *See id.* at 900 (Easterbrook, C.J., concurring in the judgment).

The "motive" complication is not present here. The complaint clearly alleges that D.B. was subjected to an overbearing investigation and unjustified court proceedings based on improper political favoritism: The investigators were biased against him and favored the twins because the twins' father was a "high-ranking" local public official. So whether improper motive is a required element or an optional method of proof, the complaint adequately pleads it and is not legally insufficient on that basis.

The remaining elements of the claim are those announced by the Supreme Court in *Olech*, which were reiterated in *Engquist* and as far as we know remain uncontroversial: A class-of-one plaintiff must plead and prove that he was " 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' " *Engquist*, 553 U.S. at 601 (quoting *Olech*, 528 U.S. at 564). The rational-basis requirement sets the legal bar low and simply requires "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 946 (7th Cir. 2009) (internal quotation marks omitted). The burden is on the challenger "to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 946–47 (internal quotation marks omitted); *see also Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (explaining that "the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification" (internal quotation marks omitted)).

"[A] 'perplexing situation' … arises when a lawsuit challenging a government action subject only to rational basis review is evaluated under the deferential standard of a Rule 12(b)(6) motion to dismiss." *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992)). A class-of-one plaintiff must anticipate this dilemma. "[T]o get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, 'a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.' " *Id.* (quoting *Wroblewski*, 965 F.2d at 460).

Whether or not bad motive is required, it is clear that an allegation of improper motive does not necessarily overcome the presumption of rationality and permit the case to move forward. To the contrary, "a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity." *Flying J Inc.*, 549 F.3d at 547. So the proper question here is this: Does the complaint reveal a rational basis for treating D.B. differently *notwithstanding* the investigators' political motivation? It does. Accordingly, the plaintiffs have pleaded themselves out of court. *See Jackson v. Marion County*, 66 F.3d 151, 153–54 (7th Cir. 1995) ("[A] plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts. Allegations in a complaint are binding admissions, and admissions can of course admit the admitter to the exit from the federal courthouse." (citations omitted)).

The complaint alleges that the twins' mother witnessed D.B.'s conduct, interpreted it as a sexual assault of her daughter, and reported the incident to Grant County authorities. In contrast, no adult witnessed the twins' conduct; the complaint alleges only that C.C. and W.C. admitted to Kopp that they "touched D.B. in the same manner for which D.B. was being investigated." Together these allegations suggest an objectively rational basis to investigate D.B. and not the twins, *even if* the investigators were subjectively motivated by a desire to protect or curry favor with the twins' father. It's rational to follow up on a report from an adult eyewitness while declining to open an investigation based on an undifferentiated admission from a five-year-old child.

Of course, political connections may also plausibly explain why D.B. was targeted for investigation and the twins were not. But the test for rationality does not ask whether the benign justification was the *actual* justification. All it takes to defeat the plaintiffs' claim is a *conceivable* rational basis for the difference in treatment. *See, e.g.*, *Heller v. Doe*, 509 U.S. 312, 320 (1993) (explaining that a classification "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification" (internal quotation marks omitted)); *Srail*, 588 F.3d at 946–47 (explaining that "any rational basis will suffice, even one that was not articulated at the time the disparate treatment occurred"). The allegations in the complaint suggest a rational reason to investigate D.B. and not the twins.

We are not suggesting that this was a well-administered investigation, or a wise exercise of prosecutorial discretion, for that matter. Our decision today should not be understood as an endorsement of this use of state power, which strikes us (assuming the allegations are true) as a troubling overreaction to a situation that could and should have been handled informally. It's easy to understand why the twins' mother would be alarmed and upset, but it's also reasonable to expect that the response by Grant County officials would be measured and proportionate. As the district court aptly put it, accusing a six-year-old boy of first-degree sexual assault shows "poor judgment at best." But poor judgment does not violate the Constitution.

Accordingly, the complaint fails to state an equal-protection claim against Kopp and Moravits. With that conclusion, the *Monell* claim against Grant County necessarily fails. *See Palka v. Shelton*, 623 F.3d 447, 455 (7th Cir. 2010) ("[B]ecause [the] complaint fails to state a claim for any constitutional violation, the … County cannot be held liable [under *Monell*] … .").

AFFIRMED.