NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 23, 2014[*]
Decided January 30, 2014

**Before**

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 13-2924

| | |
|---|---|
| NATHAN GILLIS, <br>     *Plaintiff–Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 12-C-0723 |
| WILLIAM POLLARD, *et al.*, <br>     *Defendants–Appellees.* | Charles N. Clevert, Jr. <br> *Judge.* |

**O R D E R**

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

In this suit under 42 U.S.C. § 1983, Wisconsin prisoner Nathan Gillis contends that prison guards rubbed and hit his genitals during pat-down searches in violation of the Eighth Amendment. He also maintains that those guards, and others, violated the First Amendment by retaliating against him for reporting the guards' actions. Lastly, he contends that law enforcement violated the equal protection clause of the Fourteenth Amendment by refusing to investigate his and other prisoners' criminal complaints. The district court dismissed the equal-protection claim at screening, *see* 28 U.S.C. § 1915A, and granted summary judgment for defendants on all other claims. Because video recordings conclusively refute Gillis's claims about the pat-down searches, and he has no equal-protection right to a criminal investigation, we affirm.

We recount the facts that are pertinent to this appeal, construing the evidence in Gillis's favor. At all relevant times, Gillis was housed in the segregation unit of the Waupun Correctional Institution. The prison's policy requires guards to conduct pat-down searches of segregation-unit inmates every time they leave their cells. This policy ensures the safety of inmates and staff by preventing the smuggling of contraband—including weapons—and identifying evidence of an assault or a self-inflicted injury. Under the policy, a proper pat-down search is performed with both hands in a "bladed position" (all fingers straightened and together). The pat-down begins at the collar and proceeds down the body. Because the search is designed to check the groin as a potential hiding place, a properly executed search will result in some contact between the guard's hand and the prisoner's genitals over his clothing.

Gillis swears that, during four of these pat-down searches from May to June 2012, he "had his penis and testicles rubbed [and] hit[] sexually" and painfully by two guards, Wesley Bebo and Andrew Moungey. The two guards insist that they performed the pat-downs according to prison policy and without hitting or sexual rubbing.

Although the sworn testimony is conflicting, three of the searches that Gillis challenges were captured in video recordings. One recording shows an unobstructed view of the pat-down through a sequence of silent, low-resolution frames separated at half-second intervals: Using two hands, a guard lightly pats each of Gillis's arms, quickly taps the sides of his abdomen, and then swiftly touches each outer and inner leg with a downward motion. The pat-down lasts less than ten seconds, and Gillis never flinches or recoils. The two other recorded pat-downs are similar, lasting under ten seconds each and showing no flinching. The camera view of the lower part of Gillis's body is briefly obstructed in these two recordings as other guards pass by. But Gillis

does not argue that these two searches, or the one unrecorded search, were conducted any differently than the search with the unobstructed view.

Gillis submitted four prison grievances alleging that the guards either hit or groped his genitals during the four pat-downs. A staff member investigated the grievance of the first search by reviewing the surveillance video of the pat-down and interviewing Gillis, Bebo, and Moungey (who was present during the search). Comparing Gillis's version of events to Bebo's and Moungey's—as well as to the video of the search—the investigator concluded that Bebo had not inappropriately rubbed Gillis's genitals. The investigator issued Gillis a conduct report for lying about staff, and after a disciplinary hearing, Gillis was sentenced to 360 days of administrative segregation.

In his other three grievances, Gillis accused Moungey of hitting him in the genitals during three separate pat-down searches. The first of these grievances was not investigated (the record does not indicate why), but the staff member who investigated the other two grievances concluded that Gillis had again lied about what had occurred during the pat-downs. The investigator issued two more conduct reports. Video recordings of both searches were reviewed by the investigator and by the hearing officer at Gillis's disciplinary hearings; both staff members concluded that the video recordings reflected a properly-executed pat-down search and refuted Gillis's allegation that Moungey had hit him in the groin. Gillis was disciplined two more times for lying about staff, once for each of the investigated grievances against Moungey.

In addition to filing these grievances, Gillis wrote to the district attorney and sheriff of Dodge County, asking them to launch criminal investigations of Moungey and Bebo. The district attorney replied to Gillis's request by forwarding his complaints to the warden, the Department of Corrections Legal Counsel, and the Wisconsin Attorney General. He also wrote Gillis a letter informing him that the district attorney's office "does not prosecute inmate complaints unless the institution to which he or she is confined has already found sufficient evidence of misconduct on the part of the correctional staff to warrant internal discipline" because the office does "not have the resources to prosecute other matters."

Gillis then sued in federal court. He alleged that Bebo and Moungey "hit" and "rubbed" his "penis and testicles" in violation of the Eighth Amendment; that prison staff, the warden, and officials at the Department of Corrections retaliated against him by issuing invalid conduct reports and subjecting him to prison disciplinary

procedures; and that the district attorney and the sheriff had entered into a "secret agreement" with the warden and officials at the Department of Corrections to protect them from wrongdoing. (Gillis also brought other claims that are not at issue on appeal.)

The district court screened the complaint under 28 U.S.C. § 1915A and dismissed the claim against the district attorney and the sheriff, reasoning that the "allegations related to the secret agreement are unclear and do not make sense." Gillis asked for reconsideration, pointing to the letter he had received from the district attorney. He explained that the district attorney was treating prisoners unequally by consulting with the warden before investigating their criminal complaints. The district court did not allow Gillis to proceed on the claim. It observed that the warden's involvement in a criminal investigation did not, by itself, violate Gillis's constitutional rights.

The parties cross-moved for summary judgment. On the Eighth Amendment challenge to the pat-downs, the court granted the defendants' motion. The court found that the three surveillance videos submitted by the defendants showed searches that conformed to the prison's pat-down policy and that the video evidence refuted Gillis's description of the pat-down searches. It concluded that, based on the videos, "no reasonable juror could believe [Gillis's] version of events." The judge also pointed out that Gillis had not offered any evidence to suggest that the pat-down searches lacked a penological justification. On Gillis's First Amendment claim that prison staff had issued the conduct reports to retaliate against him for complaining about the pat-down searches, the judge also concluded that the defendants were not liable. The judge reasoned that in light of the video recordings the defendants had satisfied their burden of showing that they validly issued the conduct reports.

On appeal, Gillis argues that the district court ignored his sworn assertion that the defendants rubbed and hit his testicles, and then improperly based its decision solely on the evidence, including the video recordings, submitted by the defendants. He seeks to have reinstated his Eighth Amendment and retaliation claims. Gillis also challenges the dismissal of his equal-protection claim at screening.

We agree with the district court that summary judgment for the defendants on the Eighth Amendment claim was proper. A prison guard carrying out a prison security measure can violate the Eight Amendment in one of two ways: by maliciously inflicting pain or injury, *see Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012), or by performing some action that is "intended to humiliate the victim or gratify the assailant's sexual

desires," *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). Gillis asserts both—that guards hit his penis painfully and rubbed it sexually—but the video recordings refute both aspects of his story.

First, the videos contradict Gillis's assertion that the defendants hit him in the genitals during the pat-downs. All three videos show the guards patting him with a downward motion of the hands that is inconsistent with the type of arm movement that would have been required to hit Gillis's genitals painfully. Also, none of the videos shows Gillis flinching or reacting in a way that would be expected if the guards had painfully hit his genitals. We have upheld a district court's decision to reject an assertion that prison guards struck an inmate's groin when a video recording of the interaction, though not capturing "every second of every aspect," is "fairly comprehensive" and refutes the claim. *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (video recording of the inmate did "not suggest that he was experiencing the level of discomfort that one would expect if the officers were applying substantial upward pressure to [his] groin"). *Fillmore* was decided under the clear-error standard of review, but the Supreme Court has since held that where video evidence contradicts the plaintiff's version of events, the court should not accept the plaintiff's story for purposes of summary judgment. *Scott v. Harris*, 550 U.S. 372, 378–80 (2007); *cf. Bogie v. Rosenberg*, 705 F.3d 603, 610–12 (7th Cir. 2013) (dismissal of complaint was appropriate where video exhibit attached to complaint contradicted the allegations in the complaint). Gillis does not present evidence that the recordings were altered or contend that a rational jury could interpret the videos as depicting unlawful force. Accordingly, on this record there is no triable dispute about excessive force to the groin.

Second, the videos contradict Gillis's story that the defendants rubbed his genitals gratuitously during the pat-down searches. The entire pat-down of the arms, abdomen, and legs lasts less than 10 seconds, with only a small fraction of that time spent patting down near the groin. The brevity of the lower-body portion of the pat-down thus refutes Gillis's assertion of gratuitous sexual rubbing. True, the videos record only two frames per second, and in two recordings the view of Gillis's lower body is obstructed for a couple of seconds. Therefore, it is possible that Bebo or Moungey did momentarily touch Gillis's genitals through his pants. But the defendants submitted by affidavit an uncontradicted penological justification for this kind of brief contact with the genital area over clothing during a pat-down: to check the prisoner's groin for weapons and other contraband. *See Whitman v. Nesic*, 368 F.3d 931, 934–35 (7th Cir. 2004) (upholding prison's policy of requiring inmates to be naked while providing urine sample as justified by prison's concern that inmates could contaminate or

substitute their urine samples). With that justification unrebutted, summary judgment was proper.

Gillis next challenges the grant of summary judgment on his First Amendment retaliation claim—that guards and prison officials issued conduct reports and disciplined him for falsely reporting that Bebo and Moungey hit and rubbed his genitals during pat-downs. But summary judgment for the defendants was appropriate on this claim as well. Only nonfrivolous prisoner's grievances against prison officials are protected by the First Amendment. *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Since the video evidence undisputably establishes that Gillis's grievances of sexual or forceful pat-downs were frivolous, summary judgment for the defendants on the retaliation claim was proper.

Finally, we also reject Gillis's remaining argument that the district court improperly dismissed his equal-protection claim against the sheriff and the district attorney of Dodge County. Prisoners are not a suspect class. *See Johnson v. Daley*, 339 F.3d 582, 585–86 (7th Cir. 2003) (en banc); *United States v. Vahovick*, 160 F.3d 395, 398 (7th Cir. 1998). And there is no fundamental right to have an alleged criminal prosecuted. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009); *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007). Accordingly, the proper standard for evaluating Gillis's equal-protection claim is rational basis. *See Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). Gillis did not allege any facts that would overcome "the presumption of rationality that applies to government classifications." *D.B. ex rel Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (quoting *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008)). What is more, Gillis asked the district court to consider the letter he received from the district attorney, explaining the policy not to investigate unless the warden provided evidence of guard misconduct. The letter actually refutes his equal-protection claim by providing a rational basis for the policy of consulting the warden before investigating prisoners' complaints: lack of resources. As a governmental actor, the district attorney is allowed to believe that inmates "are less honest than free persons and thus more likely to tell tall tales of victimization," *Johnson*, 339 F.3d at 592. The decision by law enforcement to allocate scarce resources accordingly does not violate equal protection.

AFFIRMED.